[No. S038067. Feb. 16, 1995.]

WESTERN STATES PETROLEUM ASSOCIATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
AIR RESOURCES BOARD et al., Real Parties in Interest.

560

562

564

**COUNSEL**

Baker & Hostetler, Donna R. Black and Bradley R. Hogin for Petitioner.

No appearance for Respondent.

Daniel E. Lungren, Attorney General, Roderick E. Walston, Chief Assistant Attorney General, Walter E. Wunderlich, Assistant Attorney General, Douglas B. Noble and Charles W. Getz IV, Acting Assistant Attorneys General, M. Anne Jennings, Deputy Attorney General, Michael P. Kenny and W. Thomas Jennings for Real Parties in Interest.

Demetriou, Del Guercio, Springer & Moyer, Jeffrey Z. B. Springer, Meyers, Nave, Riback, Silver & Wilson, Steven R. Meyers, Andrea J. Saltzman, Rick W. Jarvis, Remy & Thomas, Michael H. Remy, Tina A. Thomas, James G. Moose, J. William Yeates and Whitman F. Manley as Amici Curiae on behalf of Real Parties in Interest.

**OPINION**

**MOSK, J.**—We granted review to determine whether evidence not contained in the administrative record is admissible in a traditional mandamus action to show that a quasi-legislative administrative decision was a "prejudicial abuse of discretion" within the meaning of Public Resources Code

section 21168.5, a provision of the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.), either because the agency "has not proceeded in a manner required by law" or because the decision was not supported by "substantial evidence." We conclude that the substantial evidence standard of review prescribed by this statute is analogous to the substantial evidence standard of review applied by appellate courts to evaluate the findings of fact made in trial courts. Accordingly, just as appellate courts generally may not consider evidence not contained in the trial record when reviewing such findings, courts generally may not consider evidence not contained in the administrative record when reviewing the substantiality of the evidence supporting a quasi-legislative administrative decision under Public Resources Code section 21168.5. We also conclude that extra-record evidence is generally not admissible to show that an agency "has not proceeded in a manner required by law" in making a quasi-legislative decision. Such evidence is generally not admissible to challenge quasi-legislative decisions on non-CEQA grounds, and we see no reason to apply a different rule in CEQA cases.

## FACTS

This case involves a challenge by the Western States Petroleum Association (WSPA), an oil industry trade group, to regulations adopted by the Air Resources Board (ARB) as part of its low-emission vehicle/clean fuels (LEV/CF) program. The ARB initially adopted the LEV/CF program to reduce harmful emissions from motor vehicles, particularly those emissions that react to form ozone, one of the primary ingredients in urban smog. The specific regulations challenged here establish a "reactivity adjustment factor" to be applied to the emission standards governing certain vehicles to account for the fact that much of the weight of the organic gas emissions of methanol-fueled vehicles consists of uncombusted methanol that has little potential to form ozone. In adopting these regulations, the ARB was required to comply with the Administrative Procedure Act (APA) (Gov. Code, §§ 11340-11356). It prepared a notice of public hearing, an initial statement of reasons, and a technical support document. In accordance with the APA, the ARB provided the public access to each of these documents and held a public hearing. The ARB received extensive written and oral comment from WSPA and other companies and organizations during the public hearing. At the end of the hearing the ARB approved the regulations with certain modifications. It then circulated the regulations and received additional comment. After considering this additional information, the ARB approved the regulations and prepared a final statement of reasons, which summarized and responded to all the comments received. The Office of Administrative

Law then gave its final approval. The complete administrative record of these rulemaking proceedings is over 5,000 pages long.

After filing an unsuccessful administrative petition for the repeal of the regulations, WSPA brought an action in superior court seeking both declaratory and mandamus relief on the grounds that the regulations were based on inaccurate and unsound data and that the ARB adopted them without complying with CEQA. The ARB denied WSPA's allegations in its answer. In response to WSPA's request for discovery, the ARB moved to limit the evidence to that contained in the administrative record. The court granted the motion with the proviso that specific items of evidence could be admitted later if WSPA made an offer of proof and could demonstrate the evidence was admissible.

WSPA subsequently moved to admit eight items of evidence, none of which was contained in the administrative record. All WSPA's evidence related to the scientific bases of the regulations. The court declined to admit the evidence. WSPA then petitioned the Court of Appeal for a writ of mandamus to compel the trial court to vacate its order and admit the evidence. The Court of Appeal granted the petition.[1]

DISCUSSION

I.

A party may seek to set aside an administrative decision for failure to comply with CEQA by petitioning for either administrative mandamus (Code Civ. Proc., § 1094.5) or traditional mandamus (id., § 1085). A petition for administrative mandamus is appropriate when the party seeks review of a "determination, finding, or decision of a public agency, made as a result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in a public agency, on the grounds of noncompliance with [CEQA]," generally

[1] A court may grant a writ of mandamus only where there is no "plain, speedy, and adequate remedy, in the ordinary course of law." (Code Civ. Proc., § 1086.) In considering whether mandamus relief was warranted under this standard, the Court of Appeal stated merely that its "review of the issue [presented in WSPA's petition] suggested this is an appropriate case for extraordinary relief." The court did not discuss whether the ordinary legal remedy—direct appeal after final judgment—was adequate, as it usually is. (See generally, 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 108, pp. 744-745.) Indeed, WSPA's mandamus petition contained only a conclusory argument on this issue, and the ARB's response contained no argument at all. Had the matter been presented to us in the first instance, we might well have denied relief for this reason alone. However, because the Court of Appeal addressed the petition on its merits, we will assume the matter is properly before us.

referred to as an "adjudicatory" or "quasi-judicial" decision. (Pub. Resources Code, § 21168; see *Langsam* v. *City of Sausalito* (1987) 190 Cal.App.3d 871, 879 [235 Cal.Rptr. 672] ["It is well established that the intent of the Legislature in enacting [Code of Civil Procedure section] 1094.5 was to authorize '. . . judicial review only of the exercise by an administrative agency of an adjudicatory or quasi-judicial function.' "]; see also Cal. Administrative Mandamus (Cont.Ed.Bar 1989) § 1.1, p. 2 [administrative mandamus is the "procedure used to obtain judicial review of adjudicative decisions (i.e., decisions that determine what the facts are in relation to specific private rights or interests)"].) A petition for traditional mandamus is appropriate in all other actions brought "to attack, review, set aside, void or annul a determination, finding, or decision of a public agency on the grounds of noncompliance with [CEQA]." (Pub. Resources Code, § 21168.5; *Del Mar Terrace Conservancy, Inc.* v. *City Council* (1992) 10 Cal.App.4th 712, 726-729 [12 Cal.Rptr.2d 785]; Cal. Administrative Mandamus, *op. cit. supra,* § 1.8, pp. 8-10.) Because WSPA's petition seeks review of a quasi-legislative action by the ARB—the adoption of air quality regulations—it is properly viewed as a petition for traditional mandamus. (*Del Mar Terrace Conservancy, Inc.* v. *City Council, supra,* 10 Cal.App.4th 712, 726-729; *Sierra Club* v. *Gilroy City Council* (1990) 222 Cal.App.3d 30, 39 [271 Cal.Rptr. 393]; *Langsam* v. *City of Sausalito, supra,* 190 Cal.App.3d 871, 879 ["where an agency is exercising a quasi-legislative function, judicial review must proceed under ordinary or traditional mandamus"]; see *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; see also Cal. Administrative Mandamus, *op. cit. supra,* §§ 1.7-1.8, pp. 7-10, §§ 3.11-3.12, pp. 81-84.)

■ Courts have traditionally held that quasi-legislative actions must be challenged in traditional mandamus proceedings rather than in administrative mandamus proceedings even if the administrative agency was required by law to conduct a hearing and take evidence. (See *20th Century Ins. Co.* v. *Garamendi* (1994) 8 Cal.4th 216, 278-279 [32 Cal.Rptr.2d 807, 878 P.2d 566]; *Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 231 [1 Cal.Rptr.2d 818]; *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 279 [63 Cal.Rptr. 889].) However, recent commentators argue that the proper form of action, i.e., administrative versus traditional mandamus, should not depend on whether the administrative action was quasi-judicial or quasi-legislative, but on whether the challenged action is reviewable under Public Resources Code section 21168, because a hearing was required by law, or under Public Resources Code section 21168.5, because no hearing was required. (Kostka & Zischke, Practice Under the Cal. Environmental Quality Act (Cont.Ed.Bar 1993) § 23.44, pp. 956-957.)

If some type of hearing was required by law, they argue, Public Resources Code section 21168 applies and, according to the plain language of that provision, administrative mandamus under Code of Civil Procedure section 1094.5 is the appropriate remedy; if no hearing of any kind was required by law, Public Resources Code section 21168.5 applies and traditional mandamus under Code of Civil Procedure section 1085 is the appropriate remedy.

The contention has at least one fatal flaw. When the Legislature drafted Public Resources Code section 21168 in 1972, it borrowed the words, "made as [a] result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken and discretion in the determination of facts is vested in [a public agency]," from Code of Civil Procedure section 1094.5, subdivision (a). It was well established in 1972 that an administrative mandamus action under Code of Civil Procedure section 1094.5 was not the proper vehicle to challenge a quasi-legislative administrative decision even if the agency was required by law to hold a hearing as part of its rulemaking procedures. (See, e.g., *Wilson* v. *Hidden Valley Mun. Water Dist.*, *supra*, 256 Cal.App.2d 271, 276-281.) We assume that when the Legislature chose to incorporate the language of Code of Civil Procedure section 1094.5 into Public Resources Code section 21168, it intended that language to have the same meaning and be construed and applied in the same way as the courts had done up to that point. (*People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].) In fact, at the same time it enacted Public Resources Code sections 21168 and 21168.5, the Legislature also enacted a provision stating that "[Public Resources Code] [s]ections 21168 and 21168.5 are declaratory of existing law with respect to the judicial review of determinations or decisions of public agencies made pursuant to [CEQA.]" (Pub. Resources Code, § 21168.7.) We construe this provision to mean that the Legislature intended to adopt all existing procedural rules governing mandamus actions, including the distinction between quasi-legislative and quasi-judicial administrative decisions.

## II.

In determining whether to grant a petition for traditional mandamus on the ground that an administrative body failed to comply with CEQA in making a quasi-legislative decision, the court may consider only "whether there was a prejudicial abuse of discretion. Abuse of discretion is established if the agency has not proceeded in a manner required by law or if the determination or decision is not supported by substantial evidence." (Pub. Resources Code, § 21168.5.) ▮ The issue now before us is whether a court may consider evidence outside the administrative record in determining whether a

quasi-legislative administrative decision was an abuse of discretion under this statute.

Much of the confusion on this topic centers on certain language in the opinion in *No Oil, Inc.* v. *City of Los Angeles* (1974) 13 Cal.3d 68 [118 Cal.Rptr. 34, 529 P.2d 66] (*No Oil*). In *No Oil* the court declared in dictum that "In an action for administrative mandamus, the court reviews the administrative record, receiving additional evidence only if that evidence was unavailable at the time of the administrative hearing, or improperly excluded from the record. (Code Civ. Proc., § 1094.5.) In a traditional mandamus action, on the other hand, the court is not limited to review of the administrative record, but may receive additional evidence. (*Felt* v. *Waughop* (1924) 193 Cal. 498, 504 [225 P. 862]; *Lassen* v. *City of Alameda* (1957) 150 Cal.App.2d 44, 48 [309 P.2d 520]; Cal. Civil Writs (Cont.Ed.Bar. 1970) § 17.9.) Hence the issue before the superior court in the present case was whether substantial evidence, on the whole record including the evidence presented to that court, supported the [city council's] determination . . . . The superior court's finding—that the council's resolution was supported by substantial evidence 'in the administrative record'—is not responsive to that issue." (*No Oil, supra*, 13 Cal.3d 68, 79, fn. 6.)

The Court of Appeal read the above dictum in light of the following language in *Lassen* v. *City of Alameda* (1957) 150 Cal.App.2d 44, 47-48 [309 P.2d 520]: "When a question of fact is raised by the defendant's answer, the applicant has the right to countervail it by proof, either in direct denial or by way of avoidance (Code Civ. Proc., § 1091). If only a question of law is raised the court may hear the matter upon the papers filed and the argument (Code Civ. Proc., § 1094). Applicant may also waive his right to countervail and the matter may be heard on the papers filed and the argument." The Court of Appeal concluded that "it is only when the agency fails to answer or admits the truth of the petitioner's allegations (affirmatively or by way of demurrer), or when the petitioner waives its right to dispute the factual averments alleged in the agency's return, that the petitioner may be deprived of its right to present additional evidence in a traditional mandate action." When the facts supporting the petition are in dispute, the Court of Appeal held, extra-record evidence is admissible to show both that the administrative agency "has not proceeded in a manner required by law" and that it reached a decision that was "not supported by substantial evidence." (Pub. Resources Code, § 21168.5.)

The ARB now vigorously contends that the Court of Appeal erred in holding that extra-record evidence is admissible to challenge the substantiality of evidence under CEQA. The ARB also contends that the dictum in *No*

*Oil, supra,* 13 Cal.3d 68, 79, footnote 6, and in several Court of Appeal decisions[2] was incorrect to the extent it stated or implied a similar rule.

## III.

The Court of Appeal's basic premise was that extra-record evidence is generally admissible in a traditional mandamus action alleging that an agency abused its discretion within the meaning of Public Resources Code section 21168.5. Even if we assume for the sake of argument that this premise is correct, it does not necessarily follow that such evidence is admissible to show that a decision was "not supported by substantial evidence" within the meaning of that statute. Rather, such evidence is admissible only if it is relevant. (Evid. Code, § 350.) Evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (*Id.,* § 210.) Accordingly, the admissibility of extra-record evidence turns on whether the existence of substantial evidence is a question of fact that may be disputed by contradictory evidence or whether it is instead purely a question of law.

The ARB contends that the substantial evidence standard of review prescribed by the Legislature in Public Resources Code section 21168.5 is analogous to the substantial evidence standard used by appellate courts in reviewing the factual determinations of trial courts. Relying on this analogy, the ARB reasons that because the substantiality of the evidence supporting findings of fact made in the trial courts is a question of law (*Board of Education* v. *Jack M.* (1977) 19 Cal.3d 691, 700 [139 Cal.Rptr. 700, 566 P.2d 602]), the substantiality of the evidence supporting a quasi-legislative administrative decision is likewise a question of law and is governed by similar evidentiary rules.

The ARB's analogy is persuasive for three reasons. First, we presume that when the Legislature included the words "substantial evidence" in Public Resources Code section 21168.5, it intended them to have their established legal meaning. (*People* v. *Weidert, supra,* 39 Cal.3d 836, 845-846 ["Where the language of a statute uses terms that have been judicially construed,

---

[2](*City of Pasadena* v. *State of California* (1993) 14 Cal.App.4th 810, 821 [17 Cal.Rptr.2d 766]; *Del Mar Terrace Conservancy, Inc.* v. *City Council, supra,* 10 Cal.App.4th 712, 729; *Dunn-Edwards Corp.* v. *Bay Area Air Quality Management Dist.* (1992) 9 Cal.App.4th 644, 654 [11 Cal.Rptr.2d 850]; *Friends of La Vina* v. *County of Los Angeles* (1991) 232 Cal.App.3d 1446, 1456-1457 [284 Cal.Rptr. 171]; *Sierra Club* v. *Gilroy City Council, supra,* 222 Cal.App.3d 30, 40-41; *McQueen* v. *Board of Directors* (1988) 202 Cal.App.3d 1136, 1144 [249 Cal.Rptr. 439]; *Western Mun. Water Dist.* v. *Superior Court* (1986) 187 Cal.App.3d 1104, 1112 [232 Cal.Rptr. 359]; *Merz* v. *Board of Supervisors* (1983) 147 Cal.App.3d 933, 937 & fn. 2 [195 Cal.Rptr. 370].)

' "the presumption is almost irresistible" ' that the terms have been used ' "in the precise and technical sense which had been placed upon them by the courts." ' "].) The definition of substantial evidence review in the appellate courts is very well settled, and both we and the Courts of Appeal have repeated it countless times. (See, e.g., *Grappo* v. *Coventry Financial Corp.* (1991) 235 Cal.App.3d 496, 506 [286 Cal.Rptr. 714] [noting that standard is well established]; 9 Witkin, Cal. Procedure, *supra*, Appeal, § 278, p. 289 [substantial evidence standard has been "stated and applied in hundreds of cases"].) ▮ Indeed, we defined this standard of review at length in a leading decision some 60 years ago: "In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in to uphold the [finding] if possible. It is an elementary, but often overlooked principle of law, that when a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding]. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court." (*Crawford* v. *Southern Pac. Co.* (1935) 3 Cal.2d 427, 429 [45 P.2d 183].) ▮ If the Legislature had intended the courts to readily admit extra-record evidence in traditional mandamus actions challenging quasi-legislative administrative decisions when it drafted Public Resources Code section 21168.5, it would have chosen words that demonstrated such intent; it would not have chosen the words "substantial evidence," because these words describe a decidedly different type of judicial review.

▮ In other parts of CEQA the Legislature has expressly stated that the existence of substantial evidence depends solely on the record before the administrative agency. For example, in considering whether an environmental impact report must be prepared, the lead agency must determine whether there is "substantial evidence *in light of the whole record*" before indicating the project may have a "significant effect on the environment." (Pub. Resources Code, §§ 21080, subds. (c) & (d), 21082.2, subds. (a) & (d), italics added.) If we construe CEQA as a whole, as the rules of statutory interpretation require (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1008 [239 Cal.Rptr. 656, 741 P.2d 154]), we are left without any doubt that the Legislature intended courts to generally consider only the administrative record in determining whether a quasi-legislative administrative decision was supported by substantial evidence. Had the Legislature intended so drastic a difference between the "substantial evidence" review described in Public Resources Code section 21168.5 and the "substantial evidence in

light of the whole record" standard described in other parts of CEQA, it would have expressed this intent more clearly in the statute itself.

■■■ Second, because the Legislature has delegated quasi-legislative authority to the ARB (see Health & Saf. Code, §§ 43000, 43000.5, 43013, 43018, 43101), excessive judicial interference with the ARB's quasi-legislative actions would conflict with the well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers. (Cal. Const., art. III, § 3; see *California Hotel & Motel Assn.* v. *Industrial Welfare Com.* (1979) 25 Cal.3d 200, 212 [157 Cal.Rptr. 840, 599 P.2d 31] [judicial review of quasi-legislative administrative decisions limited, "out of deference to the separation of powers between the Legislature and the judiciary [and] to the legislative delegation of administrative authority to the agency"]; *Brock* v. *Superior Court* (1952) 109 Cal.App.2d 594, 603 [241 P.2d 283] ["In determining the scope of the review by the courts of quasi-legislative acts of administrative officers, consideration must be given to the fact that the courts must not usurp legislative power and thereby violate the separation of powers provision in the Constitution."].) ■■■ Were we to hold that courts could freely consider extra-record evidence in these circumstances, we would in effect transform the highly deferential substantial evidence standard of review in Public Resources Code section 21168.5 into a de novo standard, and under that standard the issue would be not whether the administrative decision was rational in light of the evidence before the agency but whether it was the wisest decision given all the available scientific data. The propriety or impropriety of a particular legislative decision is a matter for the Legislature and the administrative agencies to which it has lawfully delegated quasi-legislative authority; such matters are not appropriate for the judiciary.

■■■ Finally, administrative agencies to which the Legislature has delegated regulatory authority in particular areas often develop a high degree of expertise in those areas and the body of law that governs them. In recognition of this expertise, the United States Supreme Court has regularly given a high degree of deference to the regulatory decisions of federal executive agencies. (See, e.g., *Chevron U.S.A.* v. *Natural Res. Def. Council* (1984) 467 U.S. 837, 844-845 [81 L.Ed.2d 694, 704, 104 S.Ct. 2778] ["We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations 'has been consistently followed by this Court whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has

depended upon more than ordinary knowledge respecting the matters subjected to agency regulations.' "], fn. omitted.) This court has also recognized the propriety of such deference. (See *California Hotel & Motel Assn.* v. *Industrial Welfare Com., supra,* 25 Cal.3d 200, 212 [judicial review of quasi-legislative administrative decisions limited "out of deference . . . to the presumed expertise of the agency within its scope of authority"].) We see no reason to deny our state agencies similar deference under CEQA.

■■■    In light of the above, we are persuaded that the factual bases of quasi-legislative administrative decisions are entitled to the same deference as the factual determinations of trial courts, that the substantiality of the evidence supporting such administrative decisions is a question of law, and that both types of substantial evidence review are governed by similar evidentiary rules.[3] Accordingly, a court generally may consider only the administrative record in determining whether a quasi-legislative decision was supported by substantial evidence within the meaning of Public Resources Code section 21168.5.[4] This conclusion is a logical extension of our analysis in *Laurel Heights Improvement Assn.* v. *Regents of University of California* (1988) 47 Cal.3d 376 [253 Cal.Rptr. 426, 764 P.2d 278], in which we applied Public Resources Code section 21168.5 in evaluating an administrative body's approval of an environmental impact report (EIR). In the cited case we explained that "As a result of this standard, 'The court does not pass upon the correctness of the EIR's environmental conclusions, but only upon its sufficiency as an informative document.' [Citation.] [¶] . . . [¶] A court may not set aside an agency's approval of an EIR on the ground

[3]At least one scholar has noted that the United States Supreme Court customarily applies the substantial evidence standard in evaluating the sufficiency of the evidence supporting administrative decisions, and the issue of substantiality is considered to be a question of law rather than a question of fact. (Jaffe, *Judicial Review: Questions of Fact* (1956) 69 Harv. L.Rev. 1020, 1021.)

[4]We need not decide whether courts may take judicial notice of evidence not contained in the administrative record when reviewing a quasi-legislative decision for substantial evidence under Public Resources Code section 21168.5. (See Evid. Code, §§ 451-460.) In light of the analogy we draw in this case, it would seem logical to conclude that the rules governing judicial notice in such instances would be akin to those applicable in reviewing courts. (*Id.,* § 459.) However, it would never be proper to take judicial notice of evidence that (1) is absent from the administrative record, *and* (2) was not before the agency at the time it made its decision. This is so because only relevant evidence is subject to judicial notice (*People* v. *Superior Court (Smolin)* (1986) 41 Cal.3d 758, 768 [225 Cal.Rptr. 438, 716 P.2d 991], revd. on other grounds *sub nom. California* v. *Superior Court of California* (1987) 482 U.S. 400 [96 L.Ed.2d 332, 107 S.Ct. 2433]; *Mozzetti* v. *City of Brisbane* (1977) 67 Cal.App.3d 565, 578 [136 Cal.Rptr. 751]), and the only evidence that is relevant to the question of whether there was substantial evidence to support a quasi-legislative administrative decision under Public Resources Code section 21168.5 is that which was before the agency at the time it made its decision. (*Del Mar Terrace Conservancy, Inc.* v. *City Council, supra,* 10 Cal.App.4th 712, 744.)

that an opposite conclusion would have been equally or more reasonable. [Citation.] A court's task is not to weigh conflicting evidence and determine who has the better argument when the dispute is whether adverse effects have been mitigated or could be better mitigated. We have neither the resources nor scientific expertise to engage in such analysis, even if the statutorily prescribed standard of review permitted us to do so. Our limited function is consistent with the principle that 'The purpose of CEQA is not to generate paper, but to compel government at all levels to make decisions with environmental consequences in mind. . . .' [Citation.]" (47 Cal.3d at pp. 392-393; see also *Citizens of Goleta Valley* v. *Board of Supervisors* (1990) 52 Cal.3d 553, 564 [276 Cal.Rptr. 410, 801 P.2d 1161].)

## IV.

The ARB also contends extra-record evidence is not admissible to show that an administrative agency "has not proceeded in a manner required by law" within the meaning of Public Resources Code section 21168.5 in making a quasi-legislative decision. It is well settled that extra-record evidence is generally not admissible in non-CEQA traditional mandamus actions challenging quasi-legislative administrative decisions. (See, e.g., *Shapell Industries, Inc.* v. *Governing Board, supra,* 1 Cal.App.4th 218, 230-234; see also Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *op. cit. supra,* § 23.51, pp. 962-963 [noting there is an "unbroken line" of non-CEQA cases holding extra-record evidence is not admissible to challenge quasi-legislative administrative decisions].) The only difference between CEQA and non-CEQA cases is that the former are governed by the "prejudicial abuse of discretion" standard prescribed in Public Resources Code section 21168.5, whereas the latter are governed by the "arbitrary and capricious" standard. (See *Fullerton Joint Union High School Dist.* v. *State Bd. of Education* (1982) 32 Cal.3d 779, 786 [187 Cal.Rptr. 398, 654 P.2d 168] ["In reviewing . . . [non-CEQA] quasi-legislative decisions, the trial court does not inquire whether, if it had the power to act in the first instance, it would have taken the action taken by the administrative agency. The authority of the court is limited to determining whether the decision of the agency was arbitrary, capricious, entirely lacking in evidentiary support, or unlawfully or procedurally unfair."].) Although these standards of review are not fungible (*id.* at p. 794, fn. 14 ["the standard of review applicable under CEQA is a much more stringent inquiry"]), there is no sound reason why CEQA and non-CEQA cases should be governed by different evidentiary rules. In fact, the Legislature has expressly declared that "[Public Resources Code] [s]ections 21168 and 21168.5 are declaratory of existing law with respect to the judicial review of determinations or decisions

of public agencies made pursuant to [CEQA]." (Pub. Resources Code, § 21168.7.) As stated earlier, we construe this provision to mean that the Legislature intended traditional mandamus actions challenging quasi-legislative administrative decisions on CEQA grounds to be governed by "existing law," i.e., the law generally applicable to traditional mandamus actions challenging quasi-legislative administrative decisions.

The dictum in *No Oil, supra*, 13 Cal.3d 68, 79, footnote 6, quoted earlier (pt. II, *ante*), appears to be the first statement in a published opinion to suggest that the rules of evidence in CEQA and non-CEQA cases may be different. (See Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *op. cit. supra*, § 23.48, p. 960.) Recent commentators argue that the dictum was erroneous because it confused two different types of traditional mandamus actions: those challenging ministerial or informal administrative actions and those challenging quasi-legislative administrative decisions. (*Id.*, § 23.49, pp. 960-961.) They note that both of the cases cited in *No Oil, supra*, 13 Cal.3d 68, 79, footnote 6 (*Felt* v. *Waughop, supra*, 193 Cal. 498, 504, and *Lassen* v. *City of Alameda, supra*, 150 Cal.App.2d 44, 48), involved the former type of traditional mandamus action. (Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *op. cit. supra*, § 23.50, pp. 961-962.) They point out that the administrative record developed during the quasi-legislative process is usually adequate to allow the courts to review the decision without recourse to such evidence, and therefore extra-record evidence generally need not be admitted. (*Id.*, § 23.49, pp. 960-961.) Rather, they contend extra-record evidence is usually necessary only when the courts are asked to review ministerial or informal administrative actions, because there is often little or no administrative record in such cases. (*Ibid.*) Finally, they assert that if interested parties know they will not be able to introduce extra-record evidence in subsequent judicial proceedings, they will present all their evidence to the administrative agency in the first instance. (*Id.*, § 23.52, pp. 965.) For these reasons, they urge us to limit the *No Oil* dictum by holding that extra-record evidence may be admissible in traditional mandamus actions challenging ministerial or informal administrative actions but is generally not admissible in traditional mandamus actions challenging quasi-legislative administrative decisions. (*Id.*, § 23.49, pp. 960-961.)[5]

After careful consideration, we conclude that the commentators are correct. "The appropriate degree of judicial scrutiny in any particular case is

[5]These commentators propose several limited exceptions to the general rule excluding extra-record evidence in traditional mandamus actions challenging quasi-legislative administrative decisions. Specifically, they suggest that courts should admit evidence relevant to (1) issues other than the validity of the agency's quasi-legislative decision, such as the petitioner's standing and capacity to sue, (2) affirmative defenses such as laches, estoppel and res judicata, (3) the accuracy of the administrative record, (4) procedural unfairness, and (5)

perhaps not susceptible of precise formulation, but lies somewhere along a continuum with nonreviewability at one end and independent judgment at the other." (*Shapell Industries, Inc.* v. *Governing Board, supra,* 1 Cal.App.4th 218, 232.) Quasi-legislative administrative decisions are properly placed at that point of the continuum at which judicial review is more deferential; ministerial and informal actions do not merit such deference, and therefore lie toward the opposite end of the continuum. Accordingly, we do not follow the dictum in *No Oil, supra,* 13 Cal.3d 68, 79, footnote 6, and we hold that extra-record evidence is generally not admissible in traditional mandamus actions challenging quasi-legislative administrative decisions on the ground that the agency "has not proceeded in a manner required by law" within the meaning of Public Resources Code section 21168.5. However, we will continue to allow admission of extra-record evidence in traditional mandamus actions challenging ministerial or informal administrative actions if the facts are in dispute.[6]

## V.

WSPA concedes that under most circumstances evidence not contained in the administrative record is not admissible to show that a quasi-legislative administrative decision was a "prejudicial abuse of discretion" within the meaning of Public Resources Code section 21168.5. Indeed, WSPA even admits in its brief that "a court's role in reviewing evidence under the substantial evidence . . . test[] is different from the agency's role in reviewing that same evidence. Agencies must weigh the evidence and determine 'which way the scales tip,' while courts conducting substantial evidence . . . review generally do not. If courts were to independently weigh conflicting evidence in order to determine which side had a preponderance of the evidence, this would indeed usurp the agency's authority and violate the doctrine of separation of powers." ▪ However, WSPA contends there should be at least three exceptions to this general rule. First, it argues that additional evidence should be admitted to show that an administrative agency has not considered "all relevant factors" in making its decision. According to WSPA, in the case at bar such an exception would allow it to introduce (1) the opinion of Dr. Armistead Russell regarding the proper application of the "Russell test," which, according to WSPA, the ARB misapplied in developing the regulations at issue, and (2) the complete opinion of Dr. Michael Gery and other experts regarding studies prepared by Dr. William Carter and relied on by the ARB.

---

agency misconduct. (Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *op. cit. supra,* § 23.55, pp. 967-968.) Because none of these exceptions apply to the case at bar, we need not consider them.

[6]To the extent they conflict with our holding in this case, we disapprove the Court of Appeal decisions *cited in* footnote 2, *ante.*

We have held that in reviewing certain quasi-legislative administrative decisions in mandamus proceedings, the courts "must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute." (*California Hotel & Motel Assn.* v. *Industrial Welfare Com.*, *supra*, 25 Cal.3d 200, 212, fn. omitted.) The federal courts (see, e.g., *Asarco, Inc.* v. *U. S. E. P. A.* (9th Cir. 1980) 616 F.2d 1153, 1160) have recognized an "all relevant factors" exception to the general rule that extra-record evidence is not admissible to show that an action by a federal agency was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" within the meaning of section 706 of the federal Administrative Procedure Act. (5 U.S.C. § 706 (2)(A); *Citizens to Preserve Overton Park* v. *Volpe* (1971) 401 U.S. 402, 416-421 [28 L.Ed.2d 136, 153, 156, 91 S.Ct. 814].) However, if we were to adopt an "all relevant factors" exception that was as broad as the one WSPA suggests, we would place an unworkable qualification on the general rule of inadmissibility. In considering whether to admit extra-record evidence courts would be compelled to determine whether a particular "factor," i.e., a specific item of evidence, was "relevant," i.e., important enough that the administrative agency should have considered it. The issue would often become not whether the administrative decision was a prejudicial abuse of discretion, but whether the decision was wise or scientifically sound in light of the extra-record evidence. As we have explained and as WSPA has conceded, such questions are not for the courts to answer. Indeed, the very evidence that WSPA seeks to introduce vividly illustrates the potential abuses of the exception it proposes: the evidence is nothing more than contradictory expert testimony designed to raise questions regarding the wisdom of the ARB regulations. If parties could introduce such evidence under an exception as vague as the one which WSPA now proposes, the exception would swallow the rule.

WSPA's second proposed exception is no more desirable than the first. It contends that extra-record evidence should be admitted to show the evidence the ARB considered did not support its decision. WSPA asserts that evidence is "substantial" within the meaning of Public Resources Code section 21168.5 only if it is " 'reasonable in nature, credible, and of solid value' " (*Grappo* v. *Coventry Financial Corp.*, *supra*, 235 Cal.App.3d 496, 507), and if a reasonable mind might accept it as adequate to support the conclusion (*Bowman* v. *City of Petaluma* (1986) 185 Cal.App.3d 1065, 1072 [230 Cal.Rptr. 413]). Relying on this definition, WSPA argues that (1) the studies of Dr. Carter, on which the ARB relied, were not "substantial evidence" because certain expert evidence not contained in the administrative record raises a question regarding their accuracy, and (2) the only way to

demonstrate this inaccuracy is to admit the extra-record expert evidence that supposedly reveals it. Again, WSPA's argument is nothing more than a thinly veiled attempt to introduce conflicting expert testimony to question the wisdom and scientific accuracy of the ARB's decision.

██ Finally, WSPA contends that evidence that could not be produced at the administrative level "in the exercise of reasonable diligence" should be admitted in traditional mandamus proceedings. We agree. Extra-record evidence is admissible in administrative mandamus proceedings under such circumstances (Code Civ. Proc., § 1094.5, subd. (e)) and we see no reason to apply a different rule in traditional mandamus proceedings. (See Kostka & Zischke, Practice Under the Cal. Environmental Quality Act, *op. cit. supra,* § 23.54, p. 967.) However, WSPA goes on to contend that this exception would allow it to introduce *any and all* expert testimony and reports prepared *after* the ARB adopted the regulations. It apparently reasons that because this evidence did not exist when the ARB made its decision, it could not have been discovered "in the exercise of reasonable diligence." Such a broad reading of this exception would seriously undermine the finality of quasi-legislative administrative decisions. Any individual dissatisfied with a regulation could hire an expert who is likewise dissatisfied to prepare a report or give testimony explaining the grounds for his disagreement, introduce this evidence in a traditional mandamus proceeding, and, if he can persuade the court that the report raises a question regarding the wisdom of the regulation, obtain an order reopening the rulemaking proceedings. And if the administrative body were to adopt a regulation in the second proceeding that still was not to the individual's satisfaction, he could simply repeat the process. Therefore, although we agree that there is such an exception in traditional mandamus proceedings challenging quasi-legislative administrative decisions, this exception is to be very narrowly construed. Extra-record evidence is admissible under this exception only in those rare instances in which (1) the evidence in question existed *before* the agency made its decision, and (2) it was not possible in the exercise of reasonable diligence to present this evidence to the agency *before* the decision was made so that it could be considered and included in the administrative record.

In reaching the conclusion we provide today, we do not foreclose the possibility that extra-record evidence may be admissible in traditional mandamus actions challenging quasi-legislative administrative decisions under unusual circumstances or for very limited purposes not presented in the case now before us. Indeed, as we noted earlier, the federal courts have allowed admission of extra-record evidence under certain circumstances. (See, e.g., *Asarco, Inc.* v. *U.S.E.P.A., supra,* 616 F.2d 1153, 1160

[extra-record evidence is admissible "only for background information . . . or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision"].) We have on occasion looked to the federal courts for persuasive authority in the area of environmental law. (See *Wildlife Alive* v. *Chickering* (1976) 18 Cal.3d 190, 201 [132 Cal.Rptr. 377, 553 P.2d 537] ["Recognizing that [CEQA] was modeled after the [National Environmental Policy Act, 42 U.S.C. § 4321 et seq.], we have consistently treated judicial and administrative interpretation of the latter enactment as persuasive authority in interpreting CEQA."].) In addition, commentators have suggested other limited exceptions to the general rule of inadmissibility. (See fn. 5, *ante.*) However, extra-record evidence can never be admitted merely to contradict the evidence the administrative agency relied on in making a quasi-legislative decision or to raise a question regarding the wisdom of that decision.

For the reasons stated, the judgment of the Court of Appeal is reversed with directions to deny the petition for writ of mandamus.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.