[No. B083336. Second Dist., Div. Seven. Aug. 17, 1995.]

CITIZENS' COMMITTEE TO SAVE OUR VILLAGE et al., Plaintiffs
and Appellants, v.
CITY OF CLAREMONT, Defendant and Respondent;
POMONA COLLEGE, Real Party in Interest and Respondent.

## COUNSEL

Hall & Associates, Carlyle W. Hall, Jr., Gus T. May, Lisa Weil, Brent N. Rushforth and Frank P. Angel for Plaintiffs and Appellants.

Best, Best & Krieger, Wynne S. Furth and Meredith A. Jury for Defendant and Respondent.

Sidley & Austin, James M. Harris and Ronald C. Cohen for Real Party in Interest and Respondent.

Robert G. Lane as Amicus Curiae on behalf of Real Party in Interest and Respondent.

## OPINION

STOEVER, J.*—Appellants, Citizens' Committee to Save Our Village et al., appeal from a judgment denying a peremptory writ of mandate ultimately seeking to compel preparation of a formal environmental impact report (EIR). Respondent City of Claremont prepared a mitigated negative declaration (MND) in lieu of a formal EIR in connection with a building project proposed by respondent Pomona College.

This appeal relates only to the proceedings pursuant to the California Environmental Quality Act (CEQA). (Pub. Resources Code, § 21000 et seq.) All issues relating to alleged dedication for public use are the subject of another appeal pending before this court and are not considered herein.

### FACT SUMMARY AND HISTORY OF ADMINISTRATIVE AND JUDICIAL PROCEEDINGS

For a period exceeding 85 years, real party in interest, Pomona College (hereinafter College), has owned a 57,000-square-foot parcel of unimproved land on the west side of its campus (hereinafter subject property). The subject property was and is essentially vacant, except for unimproved footpaths and some natural and some planted vegetation. The parties' descriptions of this vegetation range from natural wilderness to plantings in accord with a landscape plan perhaps designed by a master architect. During this 85-year period, College has permitted public access to the subject property for passive recreational uses such as strolling, bird watching, picnicking, drawing or sketching and quiet relaxation.

The subject property is within the limits of respondent City of Claremont (hereinafter City). It is now and, since 1929, has been zoned for educational development, which permits the construction of large academic buildings. It is surrounded on all sides by suburban development. The subject property has never been designated as a public park or open space, nor has it been,

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.

listed as, or eligible to be listed as, "historic" by any governmental agency at any level, including City's general plan.

As early as 1908 and continuously thereafter to the present, College campus land-use plans specifically designated portions of the subject property for development with academic structures. These plans for use of the subject property as an integral part of campus development were not secret or privileged. Said plans had been published and were generally available for public review.

In late 1990, College proposed building a three-story, sixty-two-foot high educational structure on the subject property to be known as the "Hahn Building" (hereinafter three-story project). Plans were submitted to City and the review process began. City staff prepared an initial study specifically finding, inter alia, that the three-story project would have no impact on historic resources and concluding that an MND was appropriate.

Public comment and hearings continued on City staff's initial study. Citizens, including appellants, appeared during this review process and voiced their opposition. The only objections raised were to the height of the three-story project. There were no comments about, or issues raised regarding, the impact of the three-story project on any historical resources.

The review process and hearings on the three-story project continued over the period January 1991 to May 1991. Public comment and information was received from several sources, including the local historical society, Claremont Heritage, Inc., appellant Ray Fowler and appellant John C. McCarthy. In written response, appellant McCarthy referred to three history books: Sumner, The Story of Pomona College (1914); Lyon, The History of Pomona College (1977); and Wright, Claremont: A Pictorial History (1980).

The author of Claremont: A Pictorial History, Judy Wright, was a member of the city council throughout all of these proceedings. Appellants Robert Stafford and Ray Fowler are acknowledged by author Wright in the aforementioned book for their contributions to its content and/or publication. Appellant Fowler was a founding board member and past president of the local historical society, Claremont Heritage, Inc.

The aforementioned historical treatises suggest that the Samuel Parsons & Company firm was consulted about and paid a fee (donated by College trustee George Marston) to prepare some form of landscape and access "layout" for the subject property; and that a "Mr. Cook" or "Mr. Cooke" of the Parsons firm was the individual who prepared the "layout" and was the

on-site consultant. It must be noted at this point that the said historical treatises disclose all of the information appellants rely upon in what appellants refer to as "ancient documents" supporting their claim of historical significance.

In May 1991, the City Planning Commission denied a conditional use permit for the three-story project because of its height. College did not appeal.

College completely redesigned the Hahn Building as a two-story, forty-five-foot high structure (hereinafter two-story project). In September 1991, College submitted a new application and its redesigned plans to City for the review process. Generally speaking, the same cast of commentators participated in the second round of review as in the first. Appellant Charles Chase entered the process in opposing the two-story project.

The Hahn Building, as designed in either the three-story or two-story configuration, was permitted within the applicable City zone classification and was at all times designed with specific reference to the aforementioned historic plans for campus development. A conditional use permit was required for a structure exceeding 45 feet in height.

Throughout the prelitigation administrative proceedings, appellants challenged the project and environmental impacts resulting therefrom, if any, solely and only on the basis of public access and zoning/land use considerations. The latter, zoning/land-use issues, are not a part of this appeal. Respondents challenge the timeliness of appellants' raising the public recreation issues. The public access issue, which appellants did timely raise, and the recreational uses, considering the passive nature thereof, are inextricably entwined. Under the facts of this case, the public access issue perforce includes the public recreation issue.

In January 1992, City staff released an initial study analyzing numerous potential environmental impacts, including historic resources. The initial study recommended adoption of an MND finding that the two-story project would not have a significant impact on the environment through implementation of mitigation measures agreed to by College.

The written notice accompanying the initial study stated that "failure to file objections . . . during the public review period or at the public hearing may constitute a waiver of rights to object to the environmental determination at a later date."

The public access/passive recreation issue was directly addressed during the administrative public hearings and in the mitigated negative declaration

resulting therefrom: "The project has been designed to preserve the ability of the public to diagonally cross through the site . . . [, and] the center of the site will remain open for public use. . . . The proposed project will add benches and seating area and low level security lighting in order to encourage use of the area . . . [;] the project does not appear to impinge on any official public open space or college recreational facilities. As the site is in private ownership and as the pedestrian circulation through the site has been retained, it is found that there will not be a significant impact on the recreational opportunities with the incorporation of the following mitigation measure." City and College agreed to mitigation measure I: "The pedestrian paths through the site and courtyard area as shown on the site plan approved by the architectural commission will remain open to the public without fences or gates. This area may be closed to pedestrians only during construction activities. Prior to issuance of a certificate of occupancy a document agreeing to this and binding on the college shall be approved by the city attorney and recorded by the applicant."

In like manner, environmental issues such as aesthetics, traffic, and the preservation and enhancement of plant life through new planting and maintenance of existing trees were addressed and project effects were similarly mitigated by comprehensive requirements agreed to by College.

The City Architectural Commission adopted the MND and approved the two-story project site plan. Appellants appealed this determination to the city council, which held a noticed public hearing in March 1992. Appellants Fowler, Stafford, Chase and McCarthy appeared at the public hearing claiming that the two-story project violated City's village design plan and the zoning code (claims not raised by appellants on this appeal). Appellants did not object to or challenge the adequacy of the mitigation measures in the MND nor did they claim any elements of historical significance.

Throughout the review process for the two-story project, as in the first round of review for the three-story project, no comments were made nor were objections raised regarding negative effects of the two-story project on alleged historical resources.

The city council denied the appeal, upholding the decision of the architectural commission.

In April 1992, appellants filed their first petition for writ of mandate in superior court challenging the city council action denying appellants' appeal. (Appellants also claimed that the public had acquired rights in the subject property through the doctrine of implied dedication. The implied dedication

claim and the mandamus action were severed and thereafter proceeded as separate actions. The implied dedication action is currently on appeal before this court.) Appellants did not raise issues of historically significant vegetation or landscape design in their first mandamus action.

On April 12, 1993, the superior court issued a writ of mandate commanding the city council to set aside its March 24, 1992, denial of appellants' appeal (upholding the decision of the architectural committee approving the Hahn Building project). The superior court issued the writ on the ground that the city council failed to make formal written findings explaining its decision. The superior court specifically declined ruling on the MND vis-à-vis EIR issues until City made the required written findings.

At the bottom of the judgment granting the peremptory writ of mandate, the trial judge inserted: "Whether the respondent reopens proceedings for the taking of additional evidence is entirely left up to the respondent. GCO." The judge explained on the record that this notation was merely confirming the city council's discretion to receive or not receive additional evidence on rehearing, and specifically left open any challenge for an abuse of that discretion.

No appeal was taken.

In April 1993, the city attorney requested that appellants and College submit written contentions as to whether or not the CEQA proceedings should be reopened for additional evidence. Appellants responded by letter claiming a right to submit new evidence. Appellants' correspondence alluded to new evidence of turn-of-the-century landscape design and plantings by a nationally famous landscape architect. However, nothing was specifically claimed regarding historical significance. College also submitted its written contentions that findings be made on the state of the existing record. City set a hearing on the issue of whether or not to reopen the evidentiary CEQA hearings for May 17, 1993.

At the May 17, 1993, hearing, appellants submitted a 10-page letter claiming for the first time that the subject property had historically significant vegetation and landscape design, citing Wilson, The History of Pomona College (1977). (The same treatise relied upon by appellant McCarthy in his letter to the city council 27 months earlier, when no claim of historical significance was asserted.) Councilmembers did discuss and give some consideration to appellants' contentions regarding alleged historical significance.

At the conclusion of the May 17, 1993, hearing, the city council determined (1) that appellants' new evidence was irrelevant and/or untimely, (2)

to prepare findings based upon the existing record and (3) to set a June 14, 1993, public hearing to consider the proposed findings.

City staff prepared and circulated draft proposed findings and published notice of the June 14, 1993, hearing. Said notice stated that the purpose of the hearing was to receive comment on the adequacy of the findings and not to receive or consider new evidence on the merits of the project. However, appellants' legal counsel appeared at the June 14, 1993, hearing and presented 172 pages of evidentiary documents. Appellants' submittal included, inter alia, material and contentions constituting the basis for their claim of historical significance.

At the June 14, 1993, meeting, City adopted a resolution rescinding its March 24, 1993, action affirming the architectural review commission's approval of the Hahn Building project and approval of the MND and mitigation and monitoring program for said project; and, continued the hearing for 15 days to June 29, 1993, in order to consider the additional material submitted by appellants.

On June 29, 1993, the city council voted for the second time to proceed on the existing record; reconsidered and denied appellants' appeal; and made detailed findings of fact, including findings that appellants' newly proffered evidence regarding claims of historically significant landscape design was irrelevant and/or untimely in that it could have been presented earlier in the exercise of diligence.

In July 1993, appellants filed their second petition for writ of mandate, which proceeded on two causes of action: (1) a challenge to the merits of the negative declaration and (2) a claim that the city council's refusal to reopen public hearings was a prejudicial abuse of discretion, i.e., that the city council arbitrarily refused to consider appellants' claim of historically significant landscape design.

City and College filed motions for judgment on the peremptory writ of mandate. The trial court found that there was no credible evidence supporting any of appellants' contentions of historically significant landscape design or vegetation; and, that the city council had not abused its discretion in refusing to reopen evidentiary CEQA hearings. The petition for writ of mandate was denied. Judgment was entered. This appeal was timely filed.

## STANDARD OF APPELLATE REVIEW

Appellants contend the applicable standard of review requires this court to make an independent review of the administrative record. If such review

indicates substantial evidence giving rise to a "fair argument" in favor of appellants' position, the judgment should be reversed and preparation of a formal EIR compelled.

Respondents contend that the judgment of the trial court is presumed correct, and that the trial court used the correct legal standard unless there is a contrary indication in the record. The trial court decision must be affirmed on appeal, if correct, regardless of the trial court's reasoning.

Although only the "fair argument" standard is discussed below, the disposition of this appeal is the same under either standard.

### LAW AND DISCUSSION

Much of the documentation relied upon by appellants may have relevance to the public dedication issues raised in another appeal pending in this court. It is, however, of little value in determining the CEQA issues before the court in this appeal. As to the public access/passive recreation issue, we are here concerned with the nature and character of that activity, not with the manner in which that right, if there is such a right, was acquired.

A proposed negative declaration shall be prepared for a project subject to CEQA when the initial study identifies potentially significant effects, but (1) revisions in the project plans or proposals made or agreed to by the applicant before the proposed negative declaration is released for public review would avoid the effects or mitigate the effects to a point where clearly no significant effects would occur; and, (2) there is no substantial evidence before the agency that the project as revised may have a significant effect on the environment. (Pub. Resources Code, §§ 21064.5, 21080, subd. (c); Cal. Code Regs., tit. 14, § 15070, subd. (b).)

In this case, both City and College proceeded precisely as required in preparing the MND and circulating same for public comment. The MND is comprehensive and detailed with respect to appellants' contentions regarding public access, recreation and significant vegetation. These issues were adequately addressed and adverse impacts mitigated by the MND.

Upon the issuance of an MND, the project opponent must demonstrate by substantial evidence that the proposed mitigation measures are inadequate and that the project as revised and/or mitigated may have a significant adverse effect on the environment. The project opponent must raise such evidence at the earliest possible time in the administrative proceedings.

Appellants did not and do not now challenge the adequacy of the mitigation measures imposed by City and agreed to by College. Appellants

are, therefore, foreclosed from challenging the adequacy of the mitigation measures not challenged during the administrative proceedings. (*Resource Defense Fund* v. *Local Agency Formation Com.* (1987) 191 Cal.App.3d 886, 894 [236 Cal.Rptr. 794]; *Coalition for Student Action* v. *City of Fullerton* (1984) 153 Cal.App.3d 1194, 1198 [200 Cal.Rptr. 855]; Pub. Resources Code, § 21177, subd. (a).)

We conclude that said measures adequately mitigate the environmental effects which they address; and that appellants are foreclosed from challenging said mitigation measures.

Appellants' claim that they raised a fair argument regarding historical resources thereby requiring an EIR, not an MND. ██ In determining this issue, the appellate court must look to the administrative record and decide whether or not there is substantial evidence supporting a fair argument that the project may have a significant adverse impact upon the environment. If such substantial evidence exists, or reasonable inferences drawn therefrom, preparation of an EIR is mandatory. Consideration is not to be given contrary evidence supporting the preparation of a negative declaration. (*City of Carmel-by-the-Sea* v. *Board of Supervisors* (1986) 183 Cal.App.3d 229, 244-245 [227 Cal.Rptr. 899]; *Friends of "B" Street* v. *City of Hayward* (1980) 106 Cal.App.3d 988 [165 Cal.Rptr. 514].)

The determination of whether or not evidence is "substantial" is in itself a weighing process. The court does not look only to the evidence relied upon by appellants to the exclusion of all contrary evidence. Evidence that rebuts, contradicts or diminishes the reliability or credibility of appellants' evidence is properly considered. The absence of supporting evidence is properly considered.

"Because our focus is on the fair argument [issue], we must assess both the evidence in favor of the significant environmental impact and the evidence to the contrary—only then can we properly decide if the agency's conclusion regarding the fair argument question is supported by substantial evidence in light of the whole record. [Citation.]" (*City of Antioch* v. *City Council of the City of Pittsburg* (1986) 187 Cal. App.3d 1325, 1331 [232 Cal.Rptr. 507]; Pub. Resources Code, § 21080, subd. (d).)

██ The California Supreme Court has provided clear, definitive guidance to the meaning of "substantial evidence" as used in CEQA. (*Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559 [38 Cal.Rptr.2d 139, 888 P.2d 1268].) "We conclude that the substantial evidence standard of review prescribed by the statute is analogous to the

substantial evidence standard of review applied by appellate courts to evaluate the findings of fact made in trial courts." (*Western States Petroleum Assn., supra,* at pp. 565, 570-572.)

■ The core issues are whether or not appellants have presented substantial evidence supporting a fair argument that at sometime in the first decade of this century an historically significant landscape plan was prepared for the subject property; that said historically significant landscape plan was in fact executed; that, during the intervening eight decades of this century, the landscaping pursuant to said historically significant plan was maintained and continued on the subject property; and, that at present, in the last half of the last decade of this century, the plantings on the subject property are the product of said historically significant landscape plan.

■ The so-called "fair argument" test requires the existence of substantial evidence giving rise to the fair argument. ". . . [A] public agency must prepare an EIR whenever *substantial evidence* supports a fair argument that a proposed project 'may have a significant effect on the environment.' [Citations]." (*Laurel Heights Improvement Assn.* v. *Regents of the University of California* (1993) 6 Cal.4th 1112, 1123 [26 Cal.Rptr.2d 231, 864 P.2d 502], italics added.) ". . . [S]ince the preparation of an EIR is the key to environmental protection under CEQA, accomplishment of the high objectives of that act requires the preparation of an EIR whenever it can be fairly argued *on the basis of substantial evidence* that the project may have significant environmental impact." (*No Oil, Inc.* v. *City of Los Angeles,* (1974) 13 Cal.3d 68, 75 [118 Cal.Rptr. 34, 529 P.2d 66], italics added.)

■ The administrative record has been reviewed in its entirety. We have not considered any extra-record evidence submitted by any party to this appeal. (*Western States Petroleum Assn.* v. *Superior Court, supra,* 9 Cal.4th 559.)

Our review of the administrative record discloses that, during the first decade of this century, College was involved in a program of long-range planning for the development of its campus, including the acquisition of real properties to round out and consolidate its ownership. During this period of time, College retained the services of the Myron Hunt architectural firm to prepare a master plan for the structural development of the campus, including the subject property. Contemporaneously, the Samuel Parsons & Company firm, a renowned landscape architectural firm, was retained to perform planning services in connection with the campus development.

George Marston, a College trustee at the time, was a driving force in College's acquisition of individual ownerships which, when consolidated,

became the subject property. Marston apparently donated the fee ($1,000) to retain Samuel Parsons & Company to prepare some form of layout for the landscaping and public access to the subject property. This layout appears to have been prepared by a Mr. Cook (or Cooke) of the Parsons firm. Marston used the Parsons layout and the Hunt development plans to solicit donations of money and/or real property from various individuals, including Andrew Carnegie.

There is tangible, direct evidence of the nature of the Hunt plan for the College campus, including the subject property. There are only brief verbal references to the existence of the Parsons layout for the subject property. There is no evidence, direct or circumstantial, as to the extent, detail or nature of Parsons layout.

There is no evidence, direct or circumstantial, indicating that landscaping work pursuant to the Parsons layout was completed. (There is one reference in mid-1900's fund-raising correspondence to the effect that some work of some nature was underway pursuant to said layout.) There is no evidence, direct or circumstantial, that any specific plan of landscaping was maintained or continued during the intervening 90 years. (There is evidence that, over the intervening years, trees have died and been replaced and that the landscaping of the subject property has been supplemented and changed.) Finally, there is no credible evidence, direct or circumstantial, that landscaping in accordance with the alleged Parsons plan is in existence at the present time.

Appellants rely heavily upon a written letter report dated June 14, 1993, prepared by one Emmet Wemple, a landscape architect of considerable reputation and experience. Citing precisely the same mid-1900's information relied upon by appellants, Mr. Wemple opines that Samuel Parsons & Company prepared a landscape plan for the subject property; that the plan was in fact executed; that the planned landscaping has been maintained over the intervening 90 years; and, that, at present, the landscaping of the subject property largely represents the Parsons plan. The opinions expressed by Mr. Wemple rise only to the level of reliability and credibility as the evidence constituting the foundation for those opinions.

Assuming arguendo that the landscaping of the subject property is of the extraordinary historical significance advocated by appellants, it is dumbfounding that the record for the period between 1905 and the present is utterly silent with respect thereto. It is reasonable to expect that, if appellants were correct, there would be considerable public touting of the subject

property as a point of community and College pride and attraction. Yet, there is only silence—for 90 years.

The record discloses that both the city council and the trial court weighed the historical evidence relied upon by appellants and found it to be insubstantial. Although the trial court did weigh and balance contrary evidence, it properly did so in analyzing whether or not appellants' evidence per se was substantial.

The facts of this case present a fundamentally local issue. The City Council is uniquely situated to determine the existence or nonexistence of an allegedly significant local historical resource. The deliberations and conclusions of the local agency are instructive and helpful in this court's determination of whether or not there is substantial evidence to support appellants' claim that they have a fair argument regarding a local historical resource.

Arguably, it may have been preferable for the city council to directly address and decide the historical resource issue on its merits. However, the administrative record discloses that the city council did not ignore appellants' information purporting to demonstrate historically significant landscape design. The council, upon receiving appellants' material, continued the public hearing for 15 days. Councilmember Wright, a published City historian and expert on matters pertaining to historical registries, stated that there was no evidence that the Parsons layout had ever been executed and commented upon the paucity of evidence supporting appellants' claim of historical significance.

The operative words in the so-called fair argument standard are "substantial evidence." The historical evidence, or inferences therefrom, relied upon by appellants is not substantial.

"Argument, speculation, unsubstantiated opinion or narrative, evidence which is clearly inaccurate or erroneous, . . . , is not substantial evidence. Substantial evidence shall include facts reasonable assumptions predicated upon facts and expert opinion supported by facts." (Pub. Resources Code, § 21080, subd. (e).)

Appellants attempt to bridge the 90-year gap between the dates of the ancient documents and the present with speculation and conjecture regarding the actual planting, maintenance, continuation and existence of planned landscaping. ". . . [S]peculative possibilities are not substantial evidence of environmental impact. [Citation.]" (*Citizen Action to Serve All Students* v. *Thornley* (1990) 222 Cal.App.3d 748, 756 [272 Cal.Rptr. 83].)

We conclude that there is no substantial evidence in light of the whole administrative record that the proposed Hahn Building project would have a significant effect upon any historical resource. (See Pub. Resources Code, § 21080, subd. (d).)

■ In response to the writ of mandate, the city council rescinded its actions with respect to the MND and Hahn Building project. The council actually held a public hearing as to whether the CEQA proceedings would be reopened to new evidence or would be concluded on the basis of the existing administrative record. Appellants appeared and presented their arguments in favor of reopening the hearings to new evidence.

The "new" information submitted by appellants at the June 14, 1993, city council meeting related primarily to the public dedication issues, which were irrelevant to the environmental issues before the city council. (The "new" information regarding potential Samuel Parsons & Company involvement, which is the heart of appellants' historical resource argument, was first available to appellants two years and several public hearings earlier.)

The Emmet Wemple opinion letter dated June 14, 1993, was submitted to the city council for the first time at its June 14, 1993, meeting. Appellants' counsel conceded during the superior court proceedings that the Emmet Wemple opinion was at all times capable of being produced during the earliest stages of the administrative proceedings, which extended over a 24-plus-month period. (See *Western States Petroleum Assn.* v. *Superior Court, supra,* 9 Cal.4th 559, 578.)

*Save Oxnard Shores* v. *California Coastal Com.* (1986) 179 Cal.App.3d 140 [224 Cal.Rptr. 425] is factually, procedurally and legally distinguishable, and does not compel the reopening of evidentiary hearings in the instant case.

There is nothing in the record suggesting that the city council abused its discretion in deciding the issues addressed in the MND on the existing administrative record without receiving new evidence.

We conclude that the city council did not abuse its discretion in finding that appellants' "new evidence" was irrelevant and/or untimely with respect to the issues addressed by the MND, including historical resource issues.

■ Respondents City and College seek sanctions from appellants alleging that appellants have distorted the record and have pursued a frivolous appeal. All sides have vigorously and imaginatively argued their perspectives of the record. Such skillful advocacy does not constitute distortion.

". . . [A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—(harassment or delay)—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally without merit. [Citation.]" (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650-651 [183 Cal.Rptr. 508, 646 P.2d 179]; Code Civ. Proc., § 907.)

It does not appear to this court that this appeal is frivolous or taken solely for delay.

Amicus curiae, University of Southern California, argues that the subject property is not an "historical resource" as a matter of law because it is not listed, determined to be eligible for listing, or found to be historically significant, by any level of government. Appellants raise interesting arguments in opposition. We leave this intriguing issue for future resolution, since it is not essential to our decision herein.

### DISPOSITION

The judgment is affirmed. Respondents to recover costs on appeal. Respondents' request for sanctions is denied.

Lillie, P. J., and Woods (Fred), J., concurred.

A petition for a rehearing was denied September 15, 1995, and appellants' petition for review by the Supreme Court was denied November 2, 1995. Mosk, J., was of the opinion that the petition should be granted.