Filed 8/12/16

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| FRIENDS OF THE WILLOW GLEN TRESTLE, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CITY OF SAN JOSE et al., <br><br> Defendants and Appellants. | H041563 <br> (Santa Clara County <br> Super. Ct. No. CV260439) |


"A project that may cause a substantial adverse change in the significance of *an historical resource* is a project that may have a significant effect on the environment." (Pub. Resources Code, § 21084.1, italics added.)[1] "If there is substantial evidence, in light of the whole record before the lead agency, that the project may have a significant effect on the environment, an environmental impact report shall be prepared." (§ 21080, subd. (d).) "If a lead agency determines that a proposed project . . . would not have a significant effect on the environment, the lead agency shall adopt a negative declaration to that effect. The negative declaration shall be prepared . . . [¶] . . . [if] [t]here is no substantial evidence, in light of the whole record before the lead agency, that the project may have a significant effect on the environment." (§ 21080, subd. (c).) "'Substantial

---

[1] Subsequent statutory references are to the Public Resources Code unless otherwise specified.

evidence' . . . means enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached.  Whether a fair argument can be made that the project may have a significant effect on the environment is to be determined by examining the whole record before the lead agency."  (Cal. Code Regs., tit. 14, div. 6, ch. 3, § 15384, subd. (a).)[2]

Appellant City of San Jose (the City) proposed a project to demolish the Willow Glen Railroad Trestle (the Trestle) and replace it with a new, steel truss pedestrian bridge to service the City's trail system.  The City found that the Trestle was not a "historical resource," and therefore the project would not have a significant effect on the environment.  It adopted a mitigated negative declaration (MND) under the California Environmental Quality Act (CEQA) (§ 21000 et seq.).  Respondent Friends of the Willow Glen Trestle (Friends) challenged by a petition for writ of mandate the City's determination that an environmental impact report (EIR) was not required.  The trial court issued a peremptory writ of mandate invalidating the City's approval of the project.  It held that the City's adoption of an MND was invalid because there was a "fair argument" that the Trestle was a historical resource.  The court ordered the City to prepare and certify an EIR in compliance with CEQA.

On appeal, the City contends that the trial court applied the wrong standard of judicial review.  The City claims that it had discretion to determine whether the Trestle is a historical resource and that its discretionary determination was not subject to review

---

[2]     This chapter contains the California Environmental Quality Act guidelines. Subsequent references to "Guidelines" will be to this chapter.  "In interpreting CEQA, we accord the [CEQA] Guidelines great weight except where they are clearly unauthorized or erroneous."  (*Vineyard Area Citizens for Responsible Growth, Inc. v. City of Rancho Cordova* (2007) 40 Cal.4th 412, 428, fn. 5 (*Vineyard*).)

2

under the "fair argument" standard but was instead to be reviewed under a deferential substantial evidence standard of judicial review. Friends argues that the trial court correctly applied the fair argument standard of judicial review. It relies on this court's decision in *Architectural Heritage Assn. v. County of Monterey* (2004) 122 Cal.App.4th 1095 (*Monterey*). We conclude that our decision in *Monterey* did not accurately state the appropriate standard of judicial review that applies in this case. The statutory scheme created by the Legislature requires application of a deferential substantial evidence standard of judicial review in this case. Therefore, we will reverse and remand for the trial court to conduct its judicial review of the administrative record under the correct standard.

## I. Background

The Trestle is a wooden railroad bridge that was built in 1922 as part of a "spur line" to provide "rail freight access" to "canning districts" near downtown San Jose. In 2004, the City obtained a one-page "BRIDGE EVALUATION SHORT FORM" from "Consulting Architectural Historian" Ward Hill regarding the Trestle in connection with a proposed City trail project that did not threaten the Trestle's existence. Hill opined that "[t]he [Trestle's] design is based on standard plans for wood trestle bridges," and "the trestles and superstructure were likely replaced during the last 30 to 40 years." He concluded that the Trestle "is a typical example of a common type and has no known association with important events or persons in local history." The City also obtained a one-page letter from a State Historic Preservation Officer stating that the City's proposed 2004 project would not affect any "historic properties."

The City acquired ownership of the Trestle in 2011. In 2013, the City proposed a project to demolish the Trestle and replace it with a new steel truss pedestrian bridge as a component of the City's Three Creeks Trail system. The City determined that it would

3

cost about the same amount to replace the Trestle as to restore and retrofit it. A new steel bridge would present less of a fire hazard and have lower maintenance costs.

In March 2013, the City approved the project after concluding that it was not a project and therefore did not require CEQA review.[3] Eight months later, in November 2013, the City published a notice of intent to adopt an MND supported by an initial study. The initial study relied on the two 2004 documents to support its finding that there would be no impact on historical resources because "the bridge is an example of a common type of trestle, and was not associated with important events or persons in local history." The initial study emphasized that the Trestle was not distinctive or unique. The initial study took note of "the role of the railroad spur and the trestle in the incorporation of Willow Glen and activism regarding roadway-railroad grade separations." It "acknowledge[d] the history of the trestle and the former Western Pacific Railroad alignment through Willow Glen" and the fact that the Trestle was "locally important," but it concluded that this history did not make the Trestle a historical resource.

The City received numerous comments on the proposed MND. Jean Dresden, a local historian, submitted extensive comments describing the uniqueness and historic importance of the Trestle. Marvin Bamburg, a "CHRIS-listed"[4] historical architect, agreed with Dresden that the Trestle "is an important historical icon of the past" and "that

---

[3] The City's actions in approving the project *before* preparing and adopting the MND violated CEQA. "*Prior to* carrying out or *approving a project* for which a negative declaration *has been adopted*, the lead agency *shall consider the negative declaration together with comments . . . .*" (§ 21091, subd. (f), italics added.) The City's 2012 feasibility study explicitly acknowledged that the project would require a new initial study and a "new CEQA document." This CEQA violation was not raised by Friends below nor is it addressed by either party on appeal.

[4] "CHRIS" is the California Historical Resources Information System, which is operated by the State of California's Office of Historic Preservation.

4

it qualifies for listing in the California Register under Criteria 1 and 3."[5] Susan M. Landry, an environmental architect, agreed, and she noted that the 2004 documents relied on by the City were "outdated" and that "reports and documents" had been uncovered after 2004 demonstrating that the Trestle had long been considered historic.

In January 2014, the city council adopted the MND based on the initial study. The city council found that "the existing wood railroad trestle bridge is not a historic resource" because "the design is based on standard plans for wood trestle bridges and has no known association with important persons; the bridge materials were likely replace[d] during the last 30 or 40 years; the trestle is not unique and is unlikely to yield new, historically important information; and the trestle did not contribute to broad patterns of California's history and cultural heritage." The city council therefore concluded that the project would have no significant impact on the environment.

In February 2014, Friends filed a writ petition challenging the City's approval of the project and adoption of the MND. Friends asserted that there was substantial evidence to support a fair argument that the Trestle was a historical resource and therefore an EIR was required.[6] Friends also argued that "there is not substantial evidence that the Trestle is not historic." The City, relying on *Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039 (*Valley Advocates*), contended that the fair argument standard did not apply. It alternatively argued that Friends had failed to satisfy the fair argument standard. The City also argued that Friends was "estopped from challenging the conclusion that the trestle is not a historic resource" due to the City's 2004 conclusion in the MND for the earlier project.

---

[5]     See footnote 14, *post*.

[6]     In May 2014, the superior court issued a preliminary injunction barring the City from taking any action that "may physically alter" the Trestle during the pendency of this action.

5

In July 2014, the trial court found that the fair argument standard applied and that substantial evidence supported a fair argument that the Trestle was a historical resource.[7] In August 2014, the court entered judgment granting Friends' petition and issuing a peremptory writ of mandate directing the City to set aside its approval of the project and its adoption of the MND. The court ordered the City to "refrain from further action to approve the demolition of the Willow Glen Trestle pending preparation and certification of an EIR and compliance with the requirements of the California Environmental Quality Act."[8] In October 2014, the City timely filed a notice of appeal from the judgment.

## II. Discussion

### A. Mootness

Friends asks us to dismiss this appeal as moot because the City has already certified an EIR for this project. The trial court ordered the City to vacate its approval of the project, prepare an EIR, and comply with CEQA. The City has not vacated its approval of the project and reconsidered the project in light of the EIR as would be required by CEQA. If the City succeeds in this appeal, it might not be required to vacate

_____

[7] Although Friends cites in its appellate brief to a supplemental administrative record, no such record has been lodged in this court. There was a dispute between the parties in the trial court regarding a supplemental administrative record prepared by Friends. However, at the hearing on the petition, counsel for Friends stated: "[T]o just be clear that the record is, I think we all agree, the certified administrative record that the City . . . has provided . . . . We do have supplemental documents we'd ask be part of the record as well." The trial court's order stated that it "assumed that [the] record certified by the City (designated 'CAR') is the correct record." The administrative record lodged in this court is the one "designated 'CAR'" that the trial court considered, and we therefore consider it to be the appropriate one for us to consider in reviewing the trial court's decision.

[8] The City was ordered to file its return on or before November 6, 2015, and the court retained jurisdiction over the case.

its approval of the project or consider the impact of the demolition of the Trestle. Consequently, this appeal is not actually moot.

## B.  Standard of Appellate Review

"An appellate court's review of the administrative record for legal error and substantial evidence in a CEQA case, as in other mandamus cases, is the same as the trial court's:  the appellate court reviews the agency's action, not the trial court's decision; in that sense appellate judicial review under CEQA is de novo." (*Vineyard*, *supra*, 40 Cal.4th at p. 427.)

## C.  Standard of Judicial Review

The key dispute in this case concerns the identification of the standard for judicial review of a lead agency's determination that a project will not have an adverse impact on a "historical resource."[9]  The City contends that the trial court erroneously utilized the "fair argument" standard of judicial review.  Friends maintains that the trial court properly employed the "fair argument" standard of judicial review.  Friends alternatively argues that, even if the "fair argument" standard does not apply, the City's decision was not supported by "substantial evidence."[10]

---

[9]    The City asserts in its opening appellate brief:  "One of the critical issues before this Court is whether the trestle is a historic resource as defined by CEQA."  This is not true.  As the trial court acknowledged, "I'm not deciding whether the structure is historic or not . . . ."  The issue before this court concerns the process for determining whether the Trestle is a historic resource.  The actual question of whether the Trestle is or is not a historic resource is not a question for this court or any court.

[10]    An agency abuses its discretion under CEQA if it makes a decision that "is not supported by substantial evidence."  (§ 21168.5.)

## 1. *Hillside* Did Not Resolve This Issue

At the outset, we reject the City's claim that we are bound to adopt the holding in *Valley Advocates* on this issue because the California Supreme Court allegedly approved of the holding of *Valley Advocates* on this issue in *Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086 (*Hillside*). In *Valley Advocates*, the Fifth District Court of Appeal held, among other things, based on its construction of section 21084.1, "that the fair argument standard does not govern a lead agency's application of the definition of an historical resource." (*Valley Advocates*, *supra*, 160 Cal.App.4th at p. 1072.)

*Hillside* concerned the "unusual circumstances exception" to the application of a categorical exemption from CEQA. (*Hillside*, *supra*, 60 Cal.4th at p. 1097.) One issue before the California Supreme Court in *Hillside* was whether "in reviewing the City's conclusion that the [unusual circumstances] exception is inapplicable" the appropriate standard of judicial review was "whether there was substantial evidence in the record to support that conclusion" or instead "whether the record contains evidence of a fair argument of a significant effect on the environment." (*Ibid.*) The California Supreme Court construed the Guidelines, which set forth both the categorical exemptions and the unusual circumstances exception, and the statutes by which the Legislature had authorized categorical exemptions. It concluded that both the exemptions and the exception would be meaningless if the exception meant that the exemptions did not apply if a fair argument could be made that the project would have a significant effect on the environment. (*Hillside*, at pp. 1097-1104.) "[T]o establish the unusual circumstances exception, it is not enough for a challenger merely to provide substantial evidence that the project *may* have a significant effect on the environment, because that is the inquiry CEQA requires absent an exemption." (*Hillside*, at p. 1105.)

The California Supreme Court proceeded to consider what was the appropriate standard of judicial review for the agency's decision in the case before it. (*Hillside*,

8

*supra*, 60 Cal.4th at pp. 1112-1114.) It pointed out that the fair argument standard indisputably applied to the lead agency's decision on "whether to prepare an EIR for a nonexempt project." (*Hillside*, at p. 1112.) Consequently, a bifurcated standard of judicial review applied. The agency's decision regarding the applicability of a categorical exemption was reviewed under the fair argument standard; the agency's decision regarding the applicability of the unusual circumstances exception was reviewed under a deferential standard that asked only whether the agency's decision was supported by substantial evidence. (*Hillside*, at pp. 1114-1115.)

It was in this context that the California Supreme Court referenced *Valley Advocates*. "Finally, and again contrary to respondents' [the agency's] assertion, our approach is fully consistent with—and is, indeed, affirmatively supported by—the decision in *Valley Advocates v. City of Fresno* (2008) 160 Cal.App.4th 1039. At issue there were the following CEQA provisions: (1) section 21084.1, which provides that '[a] project that may cause a substantial adverse change in the significance of an historical resource is a project that may have a significant effect on the environment'; (2) section 21084, subdivision (e), which provides that '[a] project that may cause a substantial adverse change in the significance of a historical resource, as specified in Section 21084.1, shall not be exempted from [CEQA] pursuant to subdivision (a)'; and (3) Guidelines section 15300.2, subdivision (f), which provides that '[a] categorical exemption shall not be used for a project which may cause a substantial adverse change in the significance of a historical resource.' The court held that, in applying these provisions, 'the fair argument standard does not govern' an agency's determination of whether a building qualifies as a 'historical resource.' (*Valley Advocates*, *supra*, at p. 1072.) However, the court continued, 'once the resource has been determined to be an historical resource, then the fair argument standard applies to the question whether the proposed project "may cause a substantial adverse change in the significance of an historical resource" [citation] and thereby have a significant effect on the environment.'

9

(*Ibid.*)  This discussion supports the conclusion that, if 'unusual circumstances' are established, an agency should apply the fair argument standard in determining whether there is 'a reasonable possibility' that those circumstances will produce 'a significant effect' within the meaning of CEQA.  (Guidelines, § 15300.2, subd. (c).)"  (*Hillside*, *supra*, 60 Cal.4th at p. 1117.)

The California Supreme Court did not consider in *Hillside* the validity of the *Valley Advocates* court's holding regarding the standard of judicial review applicable to an agency's decision as to whether a resource is a historical resource.  The California Supreme Court cited *Valley Advocates* solely to reject the agency's claim that the fair argument standard had *no role to play whatsover*.  The California Supreme Court relied on *Valley Advocates* to support its conclusion that a bifurcated standard could apply where one part of the agency's decision was subjected to the substantial evidence standard and another part to the fair argument standard.  Since the California Supreme Court did not resolve in *Hillside* the issue of whether the fair argument standard applies to an agency's decision as to whether a resource is a historical resource, nothing in *Hillside* requires us to follow the holding in *Valley Advocates*.  We must ourselves resolve the issue raised in this case.

## 2.  Statutory Construction

Selection of the correct standard of judicial review necessarily depends on our construction of the statute that governs the lead agency's determination, section 21084.1. "We apply well-settled principles of statutory construction.  Our task is to discern the Legislature's intent.  The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context.  If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.  On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.  In

10

cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

We begin with the statutory language. "A project that may cause a substantial adverse change in the significance of *an historical resource* is a project that may have a significant effect on the environment. *For purposes of this section, an historical resource is* a resource listed in, or determined to be eligible for listing in, the California Register of Historical Resources. Historical resources included in a local register of historical resources, as defined in subdivision (k) of Section 5020.1, or deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1[11], are presumed to be historically or culturally significant for purposes of this section, unless the preponderance of the evidence demonstrates that the resource is not historically or culturally significant. The fact that a resource is not listed in, or determined to be eligible for listing in, the California Register of Historical Resources, not included in a local register of historical resources, or not deemed significant pursuant to criteria set forth in subdivision (g) of Section 5024.1 *shall not preclude a lead agency from determining* whether the resource may be an historical resource for purposes of this section." (§ 21084.1, italics added.)

The parties do not dispute that the Trestle had not been (1) "listed" in the California Register, (2) "determined to be eligible" for listing in the California Register, (3) "included in a local register of historical resources," or (4) "deemed significant" under section 5024.1, subdivision (g). Thus, under section 21084.1, the Trestle was not a

---

[11]      Section 5024.1, subdivision (g) provides: "A resource identified as significant in an historical resource survey may be listed in the California Register if the survey meets all of the following criteria . . . ." It is undisputed in this case that the Trestle was not identified as significant in a historical survey.

11

resource that the lead agency was required to find to be a historical resource or was required to presume to be a historical resource. The lead agency's determination as to whether the Trestle was a historical resource rested on the final sentence of section 21084.1. A "lead agency" is "not prelude[d] . . . from determining" whether the Trestle "may be an historical resource for purposes of this section."

This final sentence of section 21084.1 clearly *permits* a lead agency to *make a determination* as to whether a resource that is neither deemed nor presumed to be a historical resource is nevertheless a historical resource for CEQA purposes. However, the statutory language does not affirmatively identify the standard that the lead agency is to utilize in making this determination, and, as a result, it does not indicate the standard of judicial review that applies to such a determination.

Nonetheless, the statute's treatment of "presumed" historical resources provides substantial guidance in determining the standard of judicial review that applies to a determination under the final sentence of section 21084.1. A resource included in a local historical register is "presumed" historical "unless the preponderance of the evidence demonstrates" that it is not. The fact that a lead agency may find even a *presumptively* historical resource *not* to be a historical resource if "the preponderance of the evidence" supports the lead agency's finding necessarily establishes that such a finding would not be reviewed under the fair argument standard. The inclusion of a resource in a local historical register will by itself generally create a fair argument that the resource is historical, yet the statute plainly permits the lead agency to conclude that it is not. It would make no sense for the statute to permit the lead agency to make a finding based on a preponderance of the evidence that a resource is not a historical resource if the fair argument review standard would generally result in the invalidation of that finding. By allowing the lead agency to eliminate the presumption by making a contrary finding supported by a "preponderance" of the evidence, the statute expressly selects an evidentiary standard for the lead agency's decision that is inconsistent with that

12

decision's being subject to a fair argument standard of judicial review.[12] If the lead agency's standard for its decision is "preponderance of the evidence," the standard of judicial review logically must be whether substantial evidence *supports the lead agency's decision*, not whether a fair argument can be made to the contrary.

Since the standard of judicial review for a presumptively historical resource is substantial evidence rather than fair argument, it cannot be that the Legislature intended for the standard of judicial review for a lead agency's decision under the final sentence of section 21084.1 to be fair argument rather than substantial evidence. The final sentence of section 21084.1 imposes no presumption and sets no standard for the lead agency's decision. The Legislature intended for the lead agency to have more, not less, discretion under the final sentence, and it is inconceivable that the lead agency's decision under that sentence would be subject to *less deferential* review than its decision regarding a resource that is presumed to be a historical resource.[13]

The Guidelines are consistent with our construction of section 21084.1. "[T]he term 'historical resources' shall include the following:  [¶] . . . [¶] . . . Any object, building, structure, site, area, place, record, or manuscript *which a lead agency determines to be* historically significant or significant in the architectural, engineering, scientific, economic, agricultural, educational, social, political, military, or cultural annals of California may be considered to be an historical resource, *provided the lead agency's*

---

[12]     The legislative history of section 21084.1 is consistent with this construction of the statute.  An enrolled bill report notes that "for resources *listed on a local register*, the lead agency would be allowed to declare a project [*sic*] not historically significant if a 'preponderance of the evidence demonstrates that the resource is not historically or culturally significant.'" (Governor's Off. of Planning & Research, Enrolled Bill Rep. on Assem. Bill No. 2881 (1991-1992 Reg. Sess.) Sept. 11, 1992, pp. 3-4.)

[13]     The voluminous legislative history of section 21084.1 contains no indications to the contrary.

*determination is supported by substantial evidence in light of the whole record.*

*Generally, a resource shall be considered by the lead agency to be 'historically*

*significant' if the resource meets the criteria for listing on the California Register . . . .*"[14]

(Guidelines, § 15064.5, subd. (a)(3), italics added.)  The Guidelines state that the lead

agency's determination must be "supported by substantial evidence," which is

inconsistent with a fair argument standard of judicial review, which does not look to the

evidence supporting the lead agency's decision but to whether a fair argument can be

made.  We conclude that the Legislature did not intend for the fair argument standard to

apply to a lead agency's decision that a resource is not a historical resource under the

final sentence of section 21084.1.

### 3.  Case Authority

None of the cases cited by the parties convinces us that our construction of the

statute is inconsistent with the Legislature's intent.

The earliest decision cited by the parties is *Citizens' Com. to Save Our Village v.*

*City of Claremont* (1995) 37 Cal.App.4th 1157 (*Claremont*).  The appellants in

---

[14]    The Guidelines identify the criteria for the lead agency's determination as "Public Resources Code sections 5020.1(j) or 5024.1"; these statutes contain the same criteria set forth in the Guidelines.  (Guidelines, § 15064.5, subd. (a).)  Section 5024.1 provides:  "A resource may be listed as an historical resource in the California Register if it meets any of the following National Register of Historic Places criteria:  [¶]  (1) Is associated with events that have made a significant contribution to the broad patterns of California's history and cultural heritage.  [¶]  (2) Is associated with the lives of persons important in our past.  [¶]  (3) Embodies the distinctive characteristics of a type, period, region, or method of construction, or represents the work of an important creative individual, or possesses high artistic values.  [¶]  (4) Has yielded, or may be likely to yield, information important in prehistory or history."  (§ 5024.1, subd. (c).)  Section 5020.1, subdivision (j) provides:  " 'Historical resource' includes, but is not limited to, any object, building, structure, site, area, place, record, or manuscript which is historically or archaeologically significant, or is significant in the architectural, engineering, scientific, economic, agricultural, educational, social, political, military, or cultural annals of California."

*Claremont* contended that they had "raised a fair argument regarding historical resources, thereby requiring an EIR, not an MND." (*Claremont*, at p. 1168.) The Second District Court of Appeal did not consider whether the fair argument standard was the correct standard to apply. The court simply held that appellants had not satisfied even that standard. (*Claremont*, at pp. 1168-1172.)

In *League for Protection of Oakland's etc. Historic Resources v. City of Oakland* (1997) 52 Cal.App.4th 896 (*League*), the First District grouped into three categories the resources referenced in section 21084.1. It identified those resources listed in or determined to be eligible for listing in the California Register as "mandatory" historical resources. Those listed in a local historical register or recognized by a local government by ordinance or resolution to be historically significant were called "presumptive" historical resources. It referred to the remaining resources as those "deemed historical resources at the discretion of the lead agency." (*League*, at pp. 906-907.) Because the City of Oakland had designated the property involved in *League* as "historic" in its general plan, the First District found that the property was a presumptive historical resource and that the presumption was unrebutted. The First District did not consider whether the fair argument standard applied to the issue of whether the property was historic. (*League*, at p. 908.)

In *Monterey*, *supra*, 122 Cal.App.4th 1095, this court, citing *League* and without any substantive analysis, stated, "[i]n this case, the fair argument standard applies to all three substantive issues—historicity, impact, and mitigation—since they all bear on the question of whether an EIR is required." (*Monterey*, at p. 1109.) The parties in *Monterey* did not dispute that the fair argument standard applied to the "historicity" issue in that case, and consequently this court did not consider whether the statutory scheme and the legislative history required application of a deferential substantial evidence standard of judicial review to the issue of whether the jailhouse, which would be demolished as a

15

result of the *Monterey* project, was a historical resource within the meaning of CEQA. (*Monterey*, at pp. 1112-1113.)

Neither *Claremont*, nor *League*, nor *Monterey* explicitly considered whether the fair argument standard of judicial review rather than the deferential substantial evidence standard of judicial review was the standard that the Legislature intended to apply under section 21084.1.

The first substantive analysis of the appropriate standard of judicial review to apply to a lead agency's determination of whether a resource was a historical resource under section 21084.1 was undertaken by the Fifth District Court of Appeal in *Valley Advocates*. In *Valley Advocates*, the project proposed the demolition of a 90-year-old apartment building. The City of Fresno's Historic Preservation Commission had nominated the building for placement on the local historic register. Fresno's city council had rejected the nomination. Fresno's planning department then found the project to be categorically exempt from CEQA. When the exemption was challenged before the city council on the ground that the building was historic, the city council mistakenly believed that its earlier decision to reject the nomination had already determined that the building was not historic for CEQA purposes. The city council confirmed the categorical exemption, and the planning department approved the project. (*Valley Advocates*, *supra*, 160 Cal.App.4th at pp. 1045-1050.)

The superior court denied a petition challenging Fresno's determination that the building was not historic for CEQA purposes and its determination that the project was categorically exempt. (*Valley Advocates*, *supra*, 160 Cal.App.4th at p. 1050.) The Fifth District reversed on the ground that Fresno had improperly analyzed whether the building was historic. (*Valley Advocates*, at pp. 1050-1051.) First, relying on *League*, the Fifth District evaluated whether the building came within any of the three categories of historical resources. The building was not a mandatory historical resource because the State Historical Resources Commission had neither listed the building nor found it to be

16

eligible for listing in the California Register. (*Valley Advocates*, at pp. 1051-1054.) There was also no evidence that the building came within the presumptive category. (*Valley Advocates*, at pp. 1054-1058.)

The Fifth District then addressed the contention that the building came within what the First District had described in *League* as the "discretionary" category.[15] (*Valley Advocates*, *supra*, 160 Cal.App.4th at p. 1058.) It began with the statutory language. "The last sentence of section 21084.1 is phrased in terms of what a lead agency is not precluded from doing. This phrasing, as well as the lack of a reference to the lead agency in the second sentence of section 21084.1, creates ambiguity as to (1) what, if anything, a lead agency is required to do (i.e., its affirmative obligations) [fn. omitted] and (2) the extent of its discretionary authority. The provisions of CEQA do not address these ambiguities either in section 21084.1 or elsewhere." (*Ibid.*)

The Fifth District then proceeded to the Guidelines. "Guidelines section 15064.5, subdivision (a)(3) [fn. omitted] addresses aspects of a lead agency's discretionary authority in two ways. First, it limits what the lead agency is allowed to do. Second, it appears to impose an affirmative obligation on the lead agency. [¶] The limitation is stated at the beginning of Guidelines section 15064.5, subdivision (a)(3): 'Any object [or] building . . . which a lead agency determines to be historically significant . . . may be considered to be an historical resource, provided the lead agency's determination is supported by substantial evidence in light of the whole record.' The Guidelines use the word 'may' to identify discretionary authority. (Guidelines, § 15005, subd. (c); see § 15 ['may' defined].) Thus, Guidelines section 15064.5, subdivision (a)(3) confirms the lead

---

[15] The Fifth District distinguished *Monterey* on the grounds that the standard was not in dispute in *Monterey* and the "circumstances" were different in *Monterey* because the agency had initially identified the building as historic. (*Valley Advocates*, *supra*, 160 Cal.App.4th at pp. 1068-1069.)

agency's discretion to treat an object or building as an historical resource for purposes of CEQA and limits that discretion to situations where substantial evidence supports the lead agency's determination of historical significance. [Fn. omitted.] [¶] The second sentence of Guidelines section 15064.5, subdivision (a)(3) contains the following mandatory language: 'Generally, a resource *shall* be considered by the lead agency to be "historically significant" if the resource meets the criteria for listing on the California Register of Historical Resources . . . .' [Fn. omitted.] (Italics added.) The word 'shall' is used in the Guidelines to identify 'a mandatory element which all public agencies are required to follow.' (Guidelines, § 15005, subd. (a).)" (*Valley Advocates*, *supra*, 160 Cal.App.4th at pp. 1059-1060.) Yet the court noted: "In contrast to this explicit limitation, the Guidelines do not address the level of evidence, if any, that must support the opposite determination—namely, that the object or building is *not* historically significant."[16] (*Valley Advocates*, at p. 1059, fn. 15.)

The Fifth District then considered the issue of whether the fair argument standard of judicial review applied to the agency's decision on whether a resource fell within the discretionary category.[17] (*Valley Advocates*, *supra*, 160 Cal.App.4th at p. 1067.) Based on its construction of the statute, the Fifth District concluded that "the fair argument standard is not applicable to the determination whether the [buildings] qualify as

---

[16] The Fifth District did not address this issue. "[W]e do not address the scope of the discretion granted to lead agencies. We go only so far as to interpret Guidelines section 15064.5 to mean that, at a minimum, a lead agency has the discretion to address separately whether an object or building is an historical resource for purposes of CEQA's discretionary historical resources category." (*Valley Advocates*, *supra*, 160 Cal.App.4th at p. 1060.)

[17] The Fifth District held that the fair argument standard also did not apply to the lead agency's decision as to the application of the unusual circumstances exception to a categorical exemption. (*Valley Advocates*, *supra*, 160 Cal.App.4th at pp. 1072-1074.) That issue is not before us in this case.

historical resources at this stage of the CEQA review process."[18] (*Valley Advocates*, at pp. 1068-1070.) "Therefore, the only reasonable interpretation of section 21084.1 was that the fair argument standard does not govern a lead agency's application of the definition of an historical resource. Of course, once the resource has been determined to be an historical resource, then the fair argument standard applies to the question whether the proposed project 'may cause a substantial adverse change in the significance of an historical resource' (§ 21084.1) and thereby have a significant effect on the environment." (*Valley Advocates*, at p. 1072.)

The only other case cited by the parties that addressed this issue is the Fifth District's decision in *Citizens for Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340 (*L Street*). In *L Street*, the Fifth District again considered whether the fair argument standard applied to the lead agency's decision under the final sentence of section 21084.1 as to whether a resource was a "discretionary" historical resource. (*L Street*, at p. 365, fn. 17.) The project proposed demolition of two houses, neither of

---

[18] The Fifth District relied on what the court characterized as "a staff analysis, which appears to be attached to or included in an analysis of Senate Floor Amendments by the Senate Committee on Natural Resources and Wildlife." From this document, the Fifth District concluded that the Legislature had intended for the lead agency to have the discretion to decide that a presumptive or discretionary resource was not significant for CEQA purposes. (*Valley Advocates*, *supra*, 160 Cal.App.4th at pp. 1070-1072.)

There is no indication that this document, which was found in the files of the Natural Resources Committee, was ever presented to any committee or to the Legislature as a whole. As far as can be gleaned from the Legislature's archives, when the chairman of the Assembly Committee on Water, Parks and Wildlife submitted proposed amendments to the bill that became section 21084.1 to the Legislative Counsel's office in August 1992, he included an analysis of the proposed amendments. It is this analysis upon which the Fifth District relied. This analysis stated that, under the amended version of the bill, "[r]esources which have not been considered for the California Register, for a local register or for the State Historic Resources Inventory may, at the discretion of a lead agency, be evaluated to determine if they are significant for purposes of CEQA." Because the provenance of this document is uncertain, we do not rely on it.

19

which had been identified as a historical resource. (*L Street*, at pp. 348-349.) The City of Fresno decided that the two houses were not historical resources for purposes of CEQA and approved the project with an MND. (*L Street*, at pp. 351-352.) The trial court rejected a claim that an EIR was required because the project might have an adverse impact on historical resources. (*L Street*, at pp. 352-353.) On appeal, the Fifth District considered whether the fair argument standard applied to the determination of whether the houses were historical resources and reaffirmed its holding in *Valley Advocates* that the fair argument standard did not apply to judicial review of a lead agency's finding that a resource was not a discretionary historical resource.[19] (*L Street*, at pp. 367-369.)

### 4. Conclusion

The issue in this case is one of statutory construction to which we have applied well-settled rules. Our construction of section 21084.1 is congruent with the Fifth District's construction of this statute in *Valley Advocates* and *L Street*. The statutory scheme and the legislative history of section 21084.1 require application of a deferential substantial evidence standard of judicial review, rather than a fair argument standard of judicial review, to a lead agency's decision that a resource is not a discretionary historical resource under the final sentence of section 21084.1. To construe the statute otherwise would be inconsistent with the Legislature's explicit provision authorizing a lead agency to find that a resource that was presumed to be a historical resource was not a historical resource if the lead agency found that a preponderance of the evidence supported its finding. We therefore conclude that the deferential substantial evidence standard of review is the correct standard to apply to the City's finding that the Trestle is not a historical resource.

---

[19] The Fifth District again relied on the same document that it had relied on in *Valley Advocates* and viewed as part of the legislative history of section 21084.1. (See fn. 18, *ante*.)

20

## D. Remand

Although we exercise de novo review in this appeal from the trial court's ruling, we deem it inappropriate for us to exercise judicial review in the first instance in this case. We are a reviewing court. The trial court is tasked with conducting the requisite review in the first instance. Hence, we will remand this matter to the trial court for it to conduct judicial review under the correct standard.

## III. Disposition

The judgment is reversed. On remand, the trial court is directed to (1) vacate its judgment granting the petition and issuing a peremptory writ of mandate, and (2) determine whether the City's adoption of the MND is supported by substantial evidence that the Trestle is not a "historical resource" under CEQA. In the interests of justice, the parties shall bear their own costs on appeal.

_____

Mihara, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.

Friends of the Willow Glen Trestle v. City of San Jose
H041563

22

| | |
|---|---|
| Trial Court: | Santa Clara County Superior Court |
| Trial Judge: | Honorable Joseph Huber |
| Attorney for Plaintiff and Respondent: | Brandt-Hawley Law Group<br>Susan Brandt-Hawley |
| Attorneys for Defendants and<br>Appellants: | Office of the City Attorney<br>Richard Doyle<br>City Attorney<br><br>Nora Frimann<br>Assistant City Attorney<br><br>Kathryn J. Zoglin<br>Senior Deputy City Attorney |
| Attorneys for League of California<br>Cities as Amicus Curiae on behalf<br>of Defendants and Appellants: | Stoel Rives LLP<br>Timothy M. Taylor<br>Carissa M. Beecham |

Friends of the Willow Glen Trestle v. City of San Jose
H041563