Filed 6/9/20 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLOW GLEN TRESTLE CONSERVANCY et al., | H047068 (Santa Clara County Super. Ct. No. CV335801) |
| Plaintiffs and Appellants, | |
| v. | ORDER MODIFYING OPINION AND DENYING REHEARING |
| CITY OF SAN JOSE et al., | [NO CHANGE IN JUDGMENT] |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on May 18, 2020, be modified as follows:

1.  On page 5, first full paragraph, replace the fourth sentence which begins with "And, as the," with the following sentence:  "And, as the Conservancy concedes, CDFW's environmental review in connection with the SAA in this case was limited to fish and wildlife resources."

This modification does not affect the judgment.

The petition for rehearing is denied.

Dated: _____

                                                        Mihara, J.

_____
Premo, Acting P. J.

_____
Elia, J.

Willow Glen Trestle Conservancy v. City of San Jose
H047068

Trial Court:                                    Santa Clara County Superior Court

Trial Judge:                                    Honorable Thomas E. Kuhnle

Attorney for Plaintiffs and Appellants:         Susan Brandt-Hawley
                                                Brandt-Hawley Law Group

Attorneys for Defendants and Respondents:       Office of the City Attorney
                                                Richard Doyle
                                                City Attorney

                                                Nora Frimann
                                                Assistant City Attorney

                                                Margo Laskowska
                                                Senior Deputy City Attorney

                                                Elisa Tolentino
                                                Senior Deputy City Attorney

                                                Kathryn J. Zoglin
                                                Senior Deputy City Attorney

Willow Glen Trestle Conservancy v. City of San Jose
H047068

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| WILLOW GLEN TRESTLE CONSERVANCY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CITY OF SAN JOSE et al., <br><br> Defendants and Respondents. | H047068 <br> (Santa Clara County <br> Super. Ct. No. CV335801) |

Appellants Willow Glen Trestle Conservancy and Friends of the Willow Glen Trestle (collectively the Conservancy) challenge the trial court's denial of their mandate petition. In 2014, respondent City of San Jose (the City) approved a project that included the demolition of the Willow Glen Railroad Trestle (the project). The environmental document for that approval was a mitigated negative declaration (MND). The Conservancy's 2018 petition alleged that the City violated the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.) in 2018 by failing to provide supplemental environmental review of the project before the City sought and obtained a new Streambed Alteration Agreement (SAA) from the California Department of Fish and Wildlife (CDFW) after the City's prior SAA for the project expired. The superior court found that the City was not obligated to provide supplemental environmental review because the City's action in seeking and obtaining a new SAA was not a "new discretionary approval for the project" under California Code of Regulations,

title 14, section 15162 (CEQA Guidelines section 15162).[1] We agree with the superior court and affirm its order.

## I. Background

We traced the history of this project in our opinion in *Trestle I*, *supra*, 2 Cal.App.5th 457. The Willow Glen Railroad Trestle (the Trestle) is a wooden railroad bridge built in 1922. The City acquired ownership of the Trestle in 2011. In 2013, the City proposed a project to demolish the Trestle and replace it with a new steel truss pedestrian bridge that would serve as a link in the City's Three Creeks Trail system. (*Id.* at p. 461.) The City approved the project, adopted a mitigated negative declaration (MND), and found that the Trestle was not a historical resource. (*Id.* at pp. 461-462.)

Litigation ensued concerning whether the City should have considered the Trestle to be a historical resource. At that time, the Trestle was not listed in the California Register of Historical Resources. Had it been so listed, the City would have been statutorily mandated to consider the Trestle an historical resource. (*Trestle I*, *supra*, 2 Cal.App.5th at p. 466; Pub. Resources Code, § 21084.1.) The City ultimately prevailed in that litigation.

In May 2017, the California State Historical Resources Commission approved the listing of the Trestle in the California Register of Historical Resources, and the Trestle was so listed. In October 2017, the Commission denied the City's request for redetermination of that decision.

In March 2018, the City submitted to CDFW a "Notification of Lake or Streambed Alteration" in connection with the project. The City had submitted such a notification in

---

[1]    Chapter 3 of division 6 of this title is known as the CEQA Guidelines. The CEQA Guidelines are given " 'great weight' " in interpreting CEQA. (*Friends of Willow Glen Trestle v. City of San Jose* (2016) 2 Cal.App.5th 457, 460, fn. 2 (*Trestle I*).)

2

2014 and been issued an SAA by CDFW at that time, but the 2014 SAA had expired at the end of 2017.[2]  In April 2018, CDFW notified the City that the City's "Notification" was incomplete.  In July 2018, the City submitted to CDFW a "proposed Temporary Creek Access and Diversion Plan" for the project.  The purpose of this plan was to divert Los Gatos Creek during the Trestle demolition and bridge construction activities.

In August 2018, CDFW sent a draft SAA to the City and proposed revisions to the City's diversion plan.  The City agreed to CDFW's proposals and signed the final SAA in August 2018; CDFW signed the final SAA in October 2018.  CDFW found that the project would not have any significant impacts on fish or wildlife "with the measures specified in the 2014 MND and the [SAA]."  The final SAA permitted CDFW to amend it "at any time during its term if CDFW determines the amendment is necessary to protect an existing fish or wildlife resource."

The Conservancy sought judicial intervention to forestall the City's plan to immediately proceed with demolition of the Trestle.  The superior court temporarily enjoined the City from proceeding, but it ultimately denied the Conservancy's petition.  The court found that the City's actions in connection with obtaining the 2018 SAA were not a discretionary approval for the project that required supplemental environmental review.  The court reasoned that the City's approval of the MND in 2014 included approval of the SAA and that the acts by the City involved in obtaining the new SAA did not involve any "new discretionary approval" by the City.  The Conservancy timely filed a notice of appeal from the court's order and sought a writ of supersedeas from this court to forestall the destruction of the Trestle pending resolution of this appeal.  We granted writ relief to avoid demolition of the Trestle mooting this appeal.

---

[2]     An SAA has a maximum term of five years and may be extended only once and not for more than five years.  (Fish & G. Code, § 1605, subd. (a).)

## II. Discussion

The Conservancy's petition alleged that the City violated CEQA by "entering into the discretionary [SAA] that is the final discretionary approval required prior to moving forward with the demolition of [the Trestle]." It argued that supplemental environmental review was required under Public Resources Code section 21166 before the City could accept the SAA.

Public Resources Code section 21166 provides: "[N]o subsequent or supplemental environmental impact report shall be required by the lead agency or by any responsible agency, unless one or more of the following events occurs: [¶] . . . [¶] (b) Substantial changes occur with respect to the circumstances under which the project is being undertaken which will require major revisions in the environmental impact report. [¶] (c) New information, which was not known and could not have been known at the time the environmental impact report was certified as complete, becomes available." (Pub. Resources Code, § 21166.) This statute does not itself extend to a project, such as this one, for which the supporting environmental document was an MND, rather than an environmental impact report (EIR). (*Friends of College of San Mateo Gardens v. San Mateo County Community College Dist.* (2016) 1 Cal.5th 937, 945 (*San Mateo Gardens*).

CEQA Guidelines section 15162 extends Public Resources Code section 21166's framework to the situation where the environmental document for the project is an MND, rather than an EIR. (*San Mateo Gardens*, *supra*, 1 Cal.5th at p. 956.) "Once a project has been approved, the lead agency's role in project approval is completed, unless *further discretionary approval on that project is required. Information appearing after an approval does not require reopening of that approval.* If after the project is approved, any of the conditions described in subdivision (a) [(which mirror the circumstances set forth in Public Resources Code section 21166)] occurs, *a subsequent EIR or negative declaration shall only be prepared by the public agency which grants the next*

4

*discretionary approval for the project, if any.* In this situation no other responsible agency shall grant an approval for the project until the subsequent EIR has been certified or subsequent negative declaration adopted." (CEQA Guidelines, § 15162(c), italics added.)

CEQA Guidelines section 15162(c) applies only when, after the original approval of a project, a "further discretionary approval on that project" is required. The Conservancy argues that the City's submission of a notification to CDFW in order to obtain a new SAA after the prior SAA expired and acceptance of the new SAA amounted to an "approval on that project" by the City. While it is true that *CDFW's* issuance of the final SAA was an "approval," that action was not an approval *by the City*.[3] And, as the Conservancy concedes, CDFW could not consider whether the Trestle was an historical resource because CDFW's environmental review was limited to fish and wildlife resources. (Fish & G. Code, §§ 1602, 1603.) The Conservancy's argument depends on its characterization of *the City's* actions in seeking and obtaining the SAA as an "approval."

An SAA was required for the project because the City was barred from diverting or obstructing Los Gatos Creek without complying with Fish and Game Code sections 1602 and 1603. (Fish & G. Code, § 1602, subd. (a).) The first requirement was that a detailed "notification" be sent by the City to CDFW. The second requirement fell on CDFW: it had to ensure that the City's notification was complete and then determine whether the project may adversely affect a fish or wildlife resource. The third requirement also burdened CDFW. If the activity might adversely affect a fish or wildlife resource, CDFW was required to provide a draft SAA to the City that described the impacted resource and included "reasonable measures necessary to protect the

---

[3] It is undisputed in this case that "CDFW's authority over the Project as a CEQA responsible agency [was] limited to issuance of a streambed alteration agreement."

5

resource." (Fish & G. Code, §§ 1602, subd. (a), 1603.) The fourth requirement involved the City. The City could either accept the draft SAA or notify CDFW of any unacceptable measures. The final step was the resolution of any disagreements about these measures by means of a statutorily prescribed process that could involve the submission of disputes to arbitration. (Fish & G. Code, §§ 1602, 1603.)

The Conservancy claims that the City's act of *seeking* and *accepting* the SAA was a "discretionary approval on [the] project" under CEQA Guidelines section 15162(c) that justified supplemental environmental review. This claim cannot withstand scrutiny because it attempts to equate *any action in connection with a project* with an "*approval on*" or an "*approval* for" the project.[4] (Italics added.) If every action had to be considered an "approval," each and every step that the City took toward *implementing* an approved project would necessarily constitute another "approval on" the project, thereby endlessly reopening the City's long-final consideration of the project's environmental impacts. Yet CEQA Guidelines section 15162 explicitly provides that "[i]nformation appearing after an approval does not require reopening of that approval." "Once a project has been subject to environmental review and received approval, section 21166 and CEQA Guidelines section 15162 *limit* the circumstances under which a subsequent or supplemental EIR must be prepared. These limitations are designed to balance CEQA's central purpose of promoting consideration of the environmental consequences of public decisions with *interests in finality and efficiency*." (*San Mateo Gardens*, *supra*, 1 Cal.5th at p. 949, italics added.) "In this context, 'the interests of finality are favored over the policy of encouraging public comment.' [Citation.]" (*Chaparral Greens v. City of Chula*

---

[4]     The Conservancy attaches significance to CEQA Guidelines section 15162(c)'s use of the word "on" rather than "of." We see no significance. CEQA Guidelines section 15162(c) uses the term "for" interchangeably with "on," and we see no justification for assuming that a different meaning was intended to attach to an approval "for" a project as opposed to an approval "of" a project.

6

*Vista* (1996) 50 Cal.App.4th 1134, 1150-1151.) The City's post-approval actions implementing the project did not constitute an "approval" within the meaning of CEQA Guidelines section 15162(c).

The Conservancy maintains that different rules should apply to "a city's own project" than would apply to a "private project" because "[a]n agency always retains authority to change course in implementing its own project." In the Conservancy's view, because the City "retain[ed] discretion to reconsider or alter" the project, the City's *failure to abandon the project* was itself a new "discretionary approval for the project." While an agency may retain the discretion to abandon its own project, nothing in Public Resources Code section 21166 or CEQA Guidelines section 15162 suggests that an agency's post-approval choice *not to abandon* its project itself constitutes an "approval for the project" that justifies further environmental review. The purpose of CEQA Guidelines section 15162 is to *limit* subsequent environmental review after finality of the original environmental review, and the language of that section makes no distinction between public and private projects. We reject the Conservancy's attempt to expand the reach of CEQA Guidelines section 15162 in contravention of that section's purpose.

Now that we have laid these contentions to rest, it can be clearly seen that there is no substance to the Conservancy's claim that "[t]he SAA is a 'further discretionary approval' made by the city as the lead agency for the [project] . . . ." The City's actions in connection with the SAA simply cannot be construed as an "approval for the project." The City's 2018 application for an SAA (the "notification") was not an "approval for the project" because this notification was not an "approval." The 2013 MND provided: "The City will apply for a Streambed Alteration Agreement from CDFW and will be responsible for the implementation of all its conditions." When the City submitted a new notification to CDFW in 2018 due to the expiration of the prior SAA, it was simply *implementing* the project that it had already approved in 2014. The same is true as to the City's acceptance of the SAA, which was not an "approval" for the project but simply

another step in the implementation of the already approved project.  The only new "approval" was CDFW's, and the Conservancy does not challenge CDFW's decision to approve the SAA.

As there was no further approval of the project in 2018, CEQA Guidelines section 15162(c) did not require supplemental environmental review.  Consequently, the superior court did not err in denying the Conservancy's petition.

### III.  Disposition

The superior court's order is affirmed.  The writ of supersedeas shall dissolve upon the finality of this opinion.

_____
Mihara, J.

WE CONCUR:



_____
Premo, Acting P. J.



_____
Elia, J.



<u>Willow Glen Trestle Conservancy v. City of San Jose</u>
H047068


9

Trial Court:                                    Santa Clara County Superior Court

Trial Judge:                                    Honorable Thomas E. Kuhnle

Attorney for Plaintiffs and Appellants:         Susan Brandt-Hawley
                                                Brandt-Hawley Law Group

Attorneys for Defendants and Respondents:       Office of the City Attorney
                                                Richard Doyle
                                                City Attorney

                                                Nora Frimann
                                                Assistant City Attorney

                                                Margo Laskowska
                                                Senior Deputy City Attorney

                                                Elisa Tolentino
                                                Senior Deputy City Attorney

                                                Kathryn J. Zoglin
                                                Senior Deputy City Attorney

Willow Glen Trestle Conservancy v. City of San Jose
H047068