Filed 4/15/21  Serbrakian v. Talebi CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| HARMIK SERBRAKIAN,<br><br>　　　Plaintiff and Appellant,<br><br>　　　v.<br><br>MOSTAFA M. TALEBI,<br><br>　　　Defendant and Respondent. | B300256<br><br>(Los Angeles County<br>Super. Ct. No. NC061497) |

APPEAL from a judgment of the Superior Court of the County of Los Angeles, Mark C. Kim, Judge.  Affirmed.

Murrin Law Firm, John Owen Murrin, III, for Plaintiff and Appellant.

Law Office of Christopher J. Gonzales, Christopher J. Gonzales; Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan, for Defendant and Respondent.

# I.    INTRODUCTION

Plaintiff Harmik Serbrakian appeals from an adverse judgment on his wage and hour claims against defendant Mostafa M. Talebi, raising numerous challenges based largely on his conflicting views of the trial evidence.  We affirm.

# II.    FACTUAL BACKGROUND

## A.    *Creation of Somnus*

In 2013, Hamid Navarchi incorporated Somnus Sleep Laboratory, Inc. (Somnus) to conduct business as a sleep laboratory.  Sometime in 2013, defendant loaned money to Navarchi to help him buy equipment for Somnus and fund its operation.  Defendant, however, did not have a role in the day-to-day operations of the company, and he had no involvement in hiring or training plaintiff.

In August and November 2013, unbeknownst to defendant, Navarchi filed documents with the Secretary of State suggesting that defendant was a partner in Somnus.[1]  When defendant discovered the error in May 2015, he and Navarchi signed an agreement clarifying that defendant was only an investor in

---

[1]    Defendant testified that Navarchi erroneously listed defendant as the chief executive officer of Somnus and also forged defendant's signature on documents filed with the Secretary of State in 2013.

Somnus and that Navarchi was solely responsible for running the business and satisfying its obligations.[2]

B.  *Hiring of Plaintiff*

Plaintiff claimed he was hired by Somnus in 2013 on an hourly-wage basis.  He "basically ran [Somnus] from 2013 to 2015 on [his] own."  But Navarchi testified that he hired plaintiff as a part of management on a salaried basis, initially earning $2,400 per month and, eventually, $2,800.

C.  *Hiring of Valenzuela*

Navarchi hired Doris Valenzuela in 2015 to work at Somnus.  Plaintiff introduced himself to Valenzuela as a doctor and told her he was Navarchi's partner.  Because she believed he was an owner, Valenzuela initially took direction from plaintiff.  According to Valenzuela, plaintiff "didn't really work, he slept there all the time."  She explained that "[i]t was an every-day thing.  Every morning [she] got [to Somnus], he was sleeping."

Valenzuela confirmed that Navarchi sometimes issued paychecks to her and plaintiff that "would bounce."  On those occasions, she would "pick up . . . cash" the next day from Navarchi as reimbursement for the bounced checks, including those to plaintiff.

---

[2]     The agreement stated that defendant had previously loaned over $94,000 to Somnus and that Navarchi was responsible for paying the loan back monthly.

Prior to plaintiff's termination, Valenzuela did not have much interaction with defendant. She had never seen defendant at the sleep lab prior to August 2017.

During 2017, Valenzuela recalled that the sleep lab was not "getting [many] patients." In June and July of that year, she did not recall any sleep studies that were performed. Throughout that time period, the lab hours were 9:00 a.m. to 3:00 p.m.[3] On approximately two occasions in July 2017, the lab was open until 5:00 p.m.

D.     *Defendant's Involvement in Somnus Beginning July 1, 2017*

Defendant agreed with Navarchi to take over the operation of Somnus as of July 1, 2017. The purpose of defendant's involvement at that point was to sell Somnus, recoup his investment in it, and split any remaining proceeds with Navarchi. Defendant executed a document memorializing his agreement with Navarchi which provided, in pertinent part: "From this day on, [defendant] is responsible [for] manag[ing] the business . . . ." [¶] [He] is not responsible for any taxes [or] penalties from [federal, state, or local entities,] or [for] any of his past employees as well as any other invoices or bills due up to today."

In July 2017, defendant asked plaintiff to complete an employment application and to submit a copy of his driver's license and his social security number because defendant wanted

---

[3]     Defendant testified that, during July 2017, the sleep lab was open from 9:00 a.m. to 3:00 p.m. on Tuesdays through Thursdays and from 9:00 a.m. to 5:00 p.m. on Mondays and Fridays.

4

an accounting firm to issue paychecks for Somnus. On July 19, 2017, defendant sent plaintiff a follow-up text concerning his request for information. According to the text, defendant asked plaintiff on three prior occasions for the information, but plaintiff failed to respond.

### E.    *Defendant's Payment to Plaintiff in July 2017*

On July 8, 2017, plaintiff met defendant for a lunch meeting at a restaurant in Long Beach. During the lunch, defendant gave plaintiff a check for $2,900 written on a personal trust account. The check noted that $100 was for travel expenses and $2,800 was for salary. The check also indicated that it replaced Navarchi's "NSF" check numbers 2062 and 2065.

### F.    *Termination of Plaintiff*

On August 1, 2017, defendant went to the Somnus sleep lab because he learned plaintiff was living there. He asked plaintiff to sign a letter acknowledging that he had been sleeping at the lab and that such behavior was against company policy. When plaintiff refused to sign the letter, defendant asked him for his keys to the sleep lab, and the two men then removed defendant's personal belongings from the lab and loaded them into his car.

## III.    PROCEDURAL BACKGROUND

In November 2017, plaintiff filed a complaint against defendant and Somnus asserting a single cause of action for age

5

discrimination and hostile work environment. In May 2018, the trial court entered a default against Somnus on the complaint.

In September 2018, plaintiff filed a first amended complaint against defendant and Somnus asserting six causes of action for: (1) discrimination and hostile work environment in violation of Government Code sections 12940 and 12965; (2) failure to pay wages in violation of Labor Code section 204; (3) failure to provide itemized statements in violation of Labor Code section 226; (4) unlawful business practices in violation of Business and Professions Code section 17200 et seq.; (5) violation of the Fair Labor Standards Act (29 U.S.C. § 201 et seq.); and (6) aiding and abetting wage and hour violations and discrimination.

On April 8, 2019, the matter proceeded to a bench trial. On the second day of trial, the court granted defendant's nonsuit motion as to the fourth, fifth, and sixth causes of action.[4] The court also ruled that defendant was plaintiff's employer only from July 1, 2017 to August 1, 2017. Prior to July 1, 2017, Somnus was plaintiff's employer and defendant was only an investor in Somnus.

Following closing arguments on the third day of trial, the court found that plaintiff was not a credible witness. The court also found that plaintiff had been provided meal and rest breaks. And, the court dismissed the first cause of action because it found that plaintiff's termination was not the result of discrimination. The court then made findings on plaintiff's remaining claims for wage and hour violations and failure to provide itemized

---

[4] The record does not include a reporter's transcript or a suitable substitute such as a settled or agreed statement of the hearing on the nonsuit motion.

6

statements and orally pronounced judgment in favor of defendant on the two remaining causes of action.

On May 30, 2019, the trial court filed its statement of decision, which included the following findings of fact:

"1.  For the time period of June 20, 2013 through June 30, 2017, [plaintiff's] employer was Somnus . . . . [Defendant] had no active involvement in Somnus . . . prior to July 1, 2017 and was only a passive investor.

[¶] . . . [¶]

"3.  [Defendant] was never a person who acted on behalf of Somnus . . . [within the meaning of Labor Code section 558.1].

"4.  [Navarchi] actively managed Somnus . . . .

[¶] . . . [¶]

"6.  From July 1, 2017 through August 1, 2017, [plaintiff] was a de facto employee of [defendant].

"7.  [Plaintiff's] de facto employment with [defendant] . . . was terminated on August 1, 2017.

[¶] . . . [¶]

"9.  From July 1, 2017 to August 1, 2017, [plaintiff] was a salaried employee of [defendant] and his salary was $2,800 per month.

"10.  The hours of operation for [defendant's] business from July 1, 2017 through August 1, 2017 were 9:00 a.m. to 3:00 p.m.

[¶] . . . [¶]

"12.  Plaintiff stipulated to waive any evidence of related claims pertaining to any sleep studies claimed to have occurred in July 2017.

[¶] . . . [¶]

"15. Any and all wage claims due from [defendant] to [plaintiff] were satisfied in full due to [defendant's] payment of

7

$2,900 to [plaintiff] pursuant to check number 7268, dated July 8, 2017 [(Ex. 31)].  The [c]ourt makes a finding of fact that the July 8, 2017 check from [defendant] made out to [plaintiff] for $2,900 constituted a payment to cover any earned wages due, as well as any expenses incurred by [plaintiff] on behalf of [defendant] from July 1, 2017 to August 1, 2017."

On June 19, 2019, the trial court entered a judgment in favor of defendant from which plaintiff timely appealed.

## IV.   DISCUSSION

### A.   *Standard of Review*

Although couched in different terms, most, if not all, of plaintiff's challenges to the judgment are based on the sufficiency of the evidence in support of the trial court's various adverse factual findings.  We review such claims under the substantial evidence standard of review.  "'In reviewing the evidence on . . . appeal all conflicts must be resolved in favor of the [prevailing party], and all legitimate and reasonable inferences indulged in to uphold the [finding] if possible.  It is an elementary, but often overlooked principle of law, that when a [finding] is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the [finding].  When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court.' [Citation.]" (*Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571.)

8

"'[I]f the circumstances reasonably justify the [trier's] findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. [Citation.]" (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129.)

To the extent plaintiff raises any challenge based solely on questions of law and undisputed facts, we apply a de novo standard of review. (*Boling v. Public Employment Relations Bd.* (2018) 5 Cal.5th 898, 912–913.)

B.     *Sufficiency Challenges*

1.     Assumption of Liability

Plaintiff contends that substantial evidence supported a finding that defendant not only took control of Somnus, but also assumed its outstanding liabilities, including its alleged liability to plaintiff for any past wages due. Plaintiff's contention, that substantial evidence supported findings in *his* favor, misapprehends the standard of review. Contrary to plaintiff's contentions, we do not reweigh the evidence or make independent evaluations of witness credibility. We also disregard conflicts in the evidence and do not substitute our deductions for those of the trial court. Plaintiff therefore has failed to raise a cognizable sufficiency claim on appeal.

Even if we construed plaintiff's contention as a challenge to the sufficiency of the evidence in support of the trial court's findings that prior to July 1, 2017, defendant was a "passive investor" in Somnus who did not actively participate in its

9

management or otherwise act on its behalf, we would affirm. Defendant testified that he was only an investor in Somnus and, prior to July 1, 2017, he did not have any role in its management or day-to-day operations, a role that, according to defendant, Navarchi fulfilled. He also explained that any indications in the incorporation documents to the contrary were erroneous, an explanation corroborated by his 2015 agreement with Navarchi. In addition, Valenzuela, whom the trial court found credible, testified that she did not see defendant at the sleep lab from the time she started work there in 2015 until August 1, 2017, the day plaintiff was terminated. And, to the extent plaintiff testified that defendant assumed responsibility for any of the past wages due from Somnus, the court found that he was not a credible witness. This evidence supported a reasonable inference that defendant was not a person who acted on behalf of Somnus prior to July 2017 or who otherwise assumed its liabilities.

2. Work Hours

Plaintiff also asserts that substantial evidence supported a finding that he worked during July 2017 from 8:00 a.m. to 6:00 p.m. and during all overnight sleep studies conducted during that month. Plaintiff's assertion that his evidence on the disputed issue of his hours-worked during July was more compelling than defendant's evidence again misconstrues the standard of review. Because we do not reweigh the evidence or reassess credibility, and must disregard conflicting evidence, we do not address this claim on appeal.

Even if plaintiff asserted a direct challenge to the sufficiency of the evidence in support of the trial court's findings

10

that (1) the hours of defendant's business from July 1 to August 1, 2017, were 9:00 a.m. to 3:00 p.m.; and (2) plaintiff waived any claim for hours allegedly worked during sleep studies conducted in July, we would affirm. Valenzuela testified that the business was usually open during July 2017 from 9:00 a.m. to 3:00 p.m., and defendant generally corroborated that testimony. Further, because plaintiff agreed to waive any claim for overtime based on hours allegedly worked during July 2017 overnight sleep studies, his testimony about such overtime hours was irrelevant. Substantial evidence therefore supported the trial court's findings on the issue of the hours worked during July 2017.

### 3. Compensation for July 1 through August 1, 2017

Plaintiff next argues that, contrary to the trial court's findings, substantial evidence supported a finding that he was not paid for hours worked during the period July 1 through August 1, 2017. Plaintiff again asserts that his evidence on the issue should have been accorded more weight and credibility than any conflicting evidence. For the reasons we discuss above, we reject this contention.

In any event, the trial court's findings that (1) plaintiff's monthly salary from July 1 to August 1, 2017, was $2,800; and (2) defendant fully satisfied plaintiff's claim for wages due during that period by tendering the July 8, 2017, payment of $2,900, were supported by substantial evidence. Navarchi testified that plaintiff was hired as a salaried employee and that his highest monthly salary during his employment with Somnus was $2,800. That evidence, together with evidence that defendant was not

plaintiff's employer prior to July 1, 2017, supported a finding that the $2,900 payment on July 8, 2017, satisfied defendant's obligation to pay plaintiff for wages earned from July 1 through August 1, 2017.[5]

C.    *Other Challenges*

1.    Failure to Provide Itemized Payroll Statements

Plaintiff contends that the trial court erred, as a matter of law, by concluding that, as a salaried employee, he was not entitled to itemized wage statements as required by Labor Code section 226, subdivision (a).[6] According to plaintiff, he was

---

[5]    In a separate point heading, plaintiff contends that there was substantial evidence showing that he was entitled to payment for the hours he worked on August 1, 2017. According to plaintiff, "[i]t was undisputed" that he worked that day. In support of this contention, plaintiff cites to his own testimony, which the trial court found to be not credible. Defendant, on the other hand, testified that the sleep lab was closed on August 1, 2017, and that defendant went to the lab only to have plaintiff sign some documents, which he refused to do. The trial court credited defendant's testimony, finding that defendant did not owe plaintiff any wages for August 1, 2017, because plaintiff did not work that day. Substantial evidence thus supported the court's finding that defendant paid plaintiff all amounts he was due for hours worked through and including August 1, 2017.

[6]    Subdivision (a) provides, in pertinent part: "An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked

12

entitled to Labor Code section 226, subdivision (e)[7] penalties based on defendant's failure to provide him itemized statements. Plaintiff further contends that defendant also is liable for a $750 penalty under section 226, subdivision (f)[8] for failing to allow him to inspect his employment records following his demand.

---

by the employee, . . . (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee . . . ."

[7] Labor Code section 226, subdivision (e)(1) provides: "An employee suffering injury as a result of *a knowing and intentional failure by an employer to comply* with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees." (Italics added.)

[8] Subdivision (f) provides: "A failure by an employer to permit a current or former employee to inspect or receive a copy of records within the time set forth in subdivision (c) entitles the current or former employee or the Labor Commissioner to recover a seven-hundred-fifty-dollar ($750) penalty from the employer."

a. Background

The third cause of action of the operative complaint alleged that defendant violated Labor Code section 226, subdivision (a) by failing "to properly and accurately itemize the number of hours worked by [p]laintiff at the effective regularly hourly rates of pay and the effective overtime rates of pay" and that defendant "knowingly and intentionally failed to comply with Labor Code [section] 226, causing damages to [p]laintiff . . . ." Although plaintiff briefly referenced this claim in closing argument, he failed to specify any actual damages he suffered from the alleged failure to comply with the itemized statement requirement of subdivision (a).

The trial court's statement of decision included conclusion of law number 25, which stated that, "as a salaried employee [plaintiff] is not entitled to itemized statements and . . . there was otherwise insufficient evidence to establish [p]laintiff's claim." In his objections to the court's proposed statement, plaintiff objected to this conclusion of law, claiming that defendant's failure to comply with the itemized statement requirement made it more difficult and costly to prove his case. He also asserted that "[t]he court did not make any findings about the lack of record keeping and pay stubs required by Labor Code [section] 226." Finally, he argued that defendant was subject to a $750 penalty under Labor Code section 226, subdivision (f) for separately failing to allow plaintiff to inspect his employment records.

b.     Analysis

Even if we assume the trial court erred by concluding that plaintiff was not entitled to itemized statements as a salaried employee, plaintiff fails to demonstrate any resulting prejudice. Although injury is presumed from a violation of subdivision (a), to establish entitlement to penalties under Labor Code section 226, subdivision (e) for presumed injury, plaintiff was required to prove that defendant *knowingly and intentionally* failed to give him the itemized statements mandated by subdivision (a) for the July 1 to August 1, 2017, pay periods.  The only evidence in the record on that issue, however, supported an inference that defendant was prevented from providing itemized wage statements due to plaintiff's failure to provide timely and accurate information in connection with his job application.  On this record, plaintiff cannot demonstrate that he was prejudiced by the claimed error.

Plaintiff's alleged entitlement to an additional penalty under Labor Code section 226, subdivision (f) appears to relate to a claim that he did not plead, namely, a claim that defendant failed to allow him to inspect his employment records.  Plaintiff's third cause of action alleged only that defendant failed to provide itemized statements as required by subdivision (a).  There is no record of plaintiff moving to amend the complaint to allege the claim he now pursues on appeal.  (*Phillippe v. Shapell Industries* (1987) 43 Cal.3d 1247, 1256 ["the general rule is that a party may not for the first time on appeal change his theory of recovery"]; *Wittenberg v. Borenstein* (2020) 51 Cal.App.5th 556, 565 [same].)  We therefore find no error in the court's failure to award any penalties under Labor Code section 226, subdivision (f).

15

## 2. Misclassification of Plaintiff

Plaintiff also maintains that the trial court erred by failing to find defendant liable for "effectively characteriz[ing]" plaintiff as an independent contractor. The record, however, does not reflect that plaintiff asserted a cause of action based on this alleged conduct.[9] Instead, it appears that this is an issue that was raised, if at all, in plaintiff's objections to the statement of decision. Because plaintiff has failed to demonstrate that he adequately raised this claim in the trial court by way of a proper pleading or amendment, we do not address it further on appeal. (See, e.g., *Wittenberg v Borenstein, supra*, 51 Cal.App.5th at p. 565.)

## 3. Aiding and Abetting

In a "backup argument," plaintiff alleges that the trial court erred by failing to find that defendant aided and abetted the wage and hour violations allegedly committed by Somnus or Navarchi. As an initial matter, during trial, the court dismissed plaintiff's aiding and abetting cause of action in a hearing that was not transcribed; and plaintiff has not appealed from that ruling. In addition, the court did not make a ruling on any wage and hour violations by Somnus or Navarchi. Thus, there were no

---

[9] Plaintiff suggests that this claim was embraced within his fourth cause of action for violation of Business and Professions Code section 17200 et seq. The fourth cause of action, however, was dismissed during trial based on defendant's nonsuit motion. We have no record of the basis for that ruling because the hearing on that motion was not transcribed; and plaintiff does not separately appeal from that ruling in any event.

16

adjudicated violations that defendant could have aided and abetted. (See *Richard B. LeVine, Inc. v. Higashi* (2005) 131 Cal.App.4th 566, 574 [aiding and abetting liability in civil context depends upon the actual commission of the underlying tort].)

### 4. Damages Calculations

Plaintiff's last argument on appeal deals with his calculations of the damages and penalties to which he would be entitled in the event the judgment is reversed. Because we affirm the judgment, we do not address these matters further.

17

## V.    DISPOSITION

The judgment is affirmed.  Defendant is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

18